# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMADOU LAMINE DIOUF,
              *Petitioner-Appellee,*

v.

MICHAEL B. MUKASEY, Attorney
General,

              *Respondent-Appellant.*

No. 07-55337

D.C. No.
CV-06-07452-TJH

---

AMADOU LAMINE DIOUF,
              *Petitioner-Appellee,*

v.

MICHAEL B. MUKASEY, Attorney
General; MICHAEL CHERTOFF,
Secretary, Department of
Homeland Security; JULIE L.
MYERS, Assistant Secretary, United
States Immigration and Customs
Enforcement; NORMA BONALES-
GARIBAY Field Officer Director,
U.S. Immigration and Customs
Enforcement; GEORGE MOLINAR,
Chief of Detention and Removal
Operations, San Pedro Detention
Facility; STUART CORTEZ Officer-
in-Charge, San Pedro Detention
Facility,
              *Respondents-Appellants.*

No. 08-55504

D.C. No.
2:06-cv-07452-
TJH-FMO

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

13195

Argued and Submitted
January 7, 2008—Pasadena, California

Filed September 18, 2008

Before: Jerome Farris, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

Gjon Juncaj, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C.; Thomas H. Dupree, Jr., U.S. Department of Justice, Washington, D.C., for the respondents-appellants.

Cecillia D. Wang, ACLU Foundation, Immigrants' Rights Project, San Francisco, California; Ahilan T. Arulanantham, ACLU Foundation of Southern California, Los Angeles, California, for the petitioner-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

This consolidated appeal addresses whether the length of an alien's detention under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, entitled him to the writ of habeas corpus under 28 U.S.C. § 2241 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). The appeal also addresses whether the district court abused its discretion by preliminarily enjoining an Immigration Judge (IJ) to conduct a bond hearing for the alien, who at the time was in his twenty-third month of detention and awaiting judicial review of an order denying his request to reopen his removal proceedings. We hold that the district court erred by granting the writ of habeas corpus because the alien's detention was not "indefinite," and that the

preliminary injunction constituted an abuse of discretion because it was issued on the erroneous premise that the detention was governed by § 236 of the INA, 8 U.S.C. § 1226, rather than § 241, 8 U.S.C. § 1231. We therefore reverse the grant of habeas relief, and vacate and remand with respect to the preliminary injunction.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner-Appellee Amadou Lamine Diouf was admitted to the United States in 1996 on an F-1 non-immigrant student visa. The visa expired in June 2002. In December 2002, Diouf was found in possession of less than 30 grams of marijuana and charged with a misdemeanor under Revised Code of Washington § 69.50.401(e) (2002). Diouf pleaded guilty the following month.

The Government initiated removal proceedings against Diouf in January 2003, alleging that he was removable because he had (1) remained in the United States after the expiration of his student visa in violation of 8 U.S.C. § 1227(a)(1)(B), (2) failed to maintain non-immigrant status in violation of § 1227(a)(1)(C)(i), and (3) committed a controlled-substance offense in violation of § 1227(a)(2)(B)(i). The IJ determined that Diouf was subject to removal due to these charges. However, at Diouf's request, the IJ ordered in lieu of removal that Diouf voluntarily depart from the United States by June 24, 2003. The IJ further ordered that Diouf would be removed to Senegal if he did not depart voluntarily by the specified date. Diouf waived appeal and posted bond on March 3, 2003.

Following his release, Diouf retained counsel to reopen the removal proceedings and adjust his status from non-immigrant alien to lawful permanent resident on the basis of his planned marriage to Marie Campbell,[1] a United States citi-

---

[1]The INA provides that an alien spouse of a United States citizen may acquire the status of lawful permanent resident. 8 U.S.C.

zen to whom Diouf had become engaged in 2002. Diouf and Campbell married on June 17, 2003. The deadline for Diouf's voluntary departure passed one week later. On June 27, Campbell filed an I-130 petition in light of their recent marriage. Although counsel also prepared a motion to reopen the removal proceedings and a request for an extension of the voluntary departure period, he did not file those documents at that time.

Upon learning that Diouf remained in the country after the June 24 departure deadline, Immigration and Customs Enforcement (ICE) sent a notice requiring him to present himself for removal on September 4, 2003. Diouf failed to report as instructed, so ICE cancelled his bond, apprehended him at his home on March 29, 2005, and detained him pending execution of the removal order. ICE made arrangements for Diouf to depart for Senegal on May 26, 2005, but, after Diouf refused to leave on that date, continued to detain him. ICE warned Diouf on July 20, 2005, that he would be fined or imprisoned for up to four years under 8 U.S.C. § 1253(a) if he continued to refuse to depart.

Diouf subsequently undertook a series of legal maneuvers to prevent his removal. On May 31, 2005, he filed a motion to reopen the case before the IJ in light of his pending I-130 petition. On June 28, the IJ denied the motion as untimely. Diouf did not appeal.

After obtaining new counsel, Diouf filed a second motion to reopen in September 2005, this time arguing that his first attorney had provided ineffective assistance by (1) failing to

§ 1151(b)(2)(A)(i). For the change in status to occur, the citizen spouse must file a Form I-130 Petition for Alien Relative pursuant to 8 U.S.C. § 1154(a)(1)(A)(i), *see* 8 C.F.R. § 204.1(a)(1), and the alien spouse must file a Form I-485 application for adjustment of status pursuant to 8 U.S.C. § 1255. *See Freeman v. Gonzales*, 444 F.3d 1031, 1040 (9th Cir. 2006) (describing this procedure).

timely file a motion to reopen after the marriage, (2) failing to seek an extension of the voluntary departure date, and (3) failing to appeal the grant of voluntary departure. The IJ denied the motion on September 7, 2005, because it was not accompanied by a certificate of service.

Diouf refiled the second motion to reopen on December 8, 2005. The IJ denied the motion on the grounds that it was untimely and that Diouf was ineligible for a status adjustment. Diouf requested a stay of removal pending appeal, but the Board of Immigration Appeals (BIA) denied that request on May 26, 2006.

Two months later, the BIA affirmed the IJ, holding that the motions to reopen were untimely and that the ineffective assistance claims lacked merit. With regard to the first claim, the BIA found that Diouf's original counsel could not have timely filed a motion to reopen in connection with the application for adjustment of status because the filing deadline occurred approximately three weeks before Diouf married Campbell, and the marriage was the only asserted justification for the adjustment. The BIA then found that the attorney's failure to request an extension of the voluntary departure deadline was harmless because the IJ had already granted Diouf the maximum period allowed for voluntary departure. The BIA also found that the attorney's decision not to appeal the grant of voluntary departure was reasonable because Diouf had expressly waived the appeal.

On May 5, 2006, Diouf filed a pro se appeal of the IJ's original voluntary departure order. On June 8, 2006, the BIA dismissed the appeal as untimely.

While seeking relief before the IJ and BIA, Diouf also filed a series of petitions with this court. On June 1, 2005, he filed a pro se petition for review and a motion to stay his removal pursuant to General Order 6.4(c). *See* Dkt. No. 05-73252. We granted a temporary stay and on June 16, 2005, ordered Diouf

to submit a copy of the BIA order that he sought to challenge. Diouf subsequently filed a petition to proceed in forma pauperis and obtain counsel, but failed to provide a copy of a reviewable BIA order. We therefore dismissed the petition for lack of jurisdiction on August 9, 2005, issuing the mandate on August 31, and lifting the temporary stay.

On August 29, 2005, Diouf filed a second pro se petition for review and another motion for a stay of removal. *See* Dkt. No. 05-75026. We again entered a temporary stay and on September 19, 2005, ordered Diouf to pay a filing fee and provide either a correct alien identification number or a copy of the BIA order he sought to challenge. Diouf did not comply with this order, so we issued another order on November 4, 2005, directing him either to comply with the requirements of the September 19 order or show cause why the petition should not be dismissed for lack of jurisdiction. Diouf filed a response on December 5, 2005. On January 31, 2006, we found that the petition was not a timely challenge to a final order of removal, and dismissed for lack of jurisdiction. We subsequently granted a request from Diouf for an extension of time to file a motion to reconsider, but Diouf ultimately did not file the motion. The mandate issued on May 1, 2006, and the stay lifted. Diouf filed a motion to reopen on May 4, but we construed the motion as one for reconsideration and denied it as untimely on May 22.

Diouf filed a third pro se petition for review and motion for stay of removal on February 7, 2006. *See* Dkt. No. 06-70731. We entered another temporary stay on March 10, 2006, and again directed Diouf to pay the filing fee and provide either a correct alien identification number or a copy of the BIA order he sought to challenge. Diouf did not respond. On April 5, we dismissed the petition for failure to prosecute, and the stay lifted.

Diouf filed a fourth pro se petition for review and request for a stay of removal eight days later. *See* Dkt. No. 06-71922.

We again entered a temporary stay and ordered Diouf to provide his alien identification number and a copy of the BIA order he sought to challenge. Diouf complied with this order on May 15, 2006, clarifying that his petition challenged the BIA's July 2006 denial of his motions to reopen. We granted the motion for a stay of removal on July 21, 2006, and appointed pro bono counsel to represent Diouf on January 17, 2007. The case remains pending before another panel of this court.

Diouf filed a fifth and final pro se petition on August 15, 2006, again seeking review of the BIA's July 2006 denial of the motions to reopen. *See* Dkt. No. 06-73991. This petition was consolidated with Diouf's fourth petition on October 16, 2006, and remains pending before the other panel. *See id.*

Diouf remained in detention while he pursued relief before the IJ, BIA, and this court. To determine whether the detention remained justified, ICE conducted a post-order custody review pursuant to 8 C.F.R. § 241.4 on July 25, 2006.[2] ICE determined that Diouf should remain in custody pending removal because his "criminal history and lack of family support" suggest he might flee if released. The detention therefore continued.

On November 21, 2006, Diouf filed a petition for the writ of habeas corpus in the district court. He requested that the court enter a preliminary injunction for immediate release on the grounds that his lengthy detention violates § 236(a) of the INA, 8 U.S.C. § 1226(a), and the Due Process Clause of the Fifth Amendment. As an alternative to immediate release, Diouf requested a preliminary injunction ordering the IJ to hold a hearing at which the Government would have the burden of justifying the detention.

---

[2]The record does not support the Government's contention that Diouf also received a post-order custody review on July 21, 2005.

The district court entered the following preliminary injunction on January 4, 2007:

> Petitioner must be within thirty days afforded an individual hearing before an immigration judge concerning whether his prolonged detention is justified. At the hearing, the immigration judge shall order Petitioner released on reasonable conditions unless the government shows by clear and convincing evidence that Petitioner presents a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future.

Pursuant to the injunction, the IJ conducted a hearing on February 9, 2007, to determine whether Diouf's prolonged detention remained justified. The IJ held, after receiving evidence from both sides, that Diouf did not present a sufficient danger to the community or risk of flight to justify the detention, which by then had extended over twenty-two months. The IJ accordingly released Diouf on bond the same day. The Government appeals the district court's preliminary injunction.

While the Government's appeal of the preliminary injunction was pending before this panel, a magistrate judge issued a report and recommendation concerning Diouf's petition for habeas corpus under 28 U.S.C. § 2241. The magistrate judge recommended that the district court grant the petition because the length of Diouf's detention violates 8 U.S.C. § 1226(a). The district court adopted this recommendation on February 6, 2008, granted the petition, and ordered Diouf released on the conditions previously imposed by the IJ. The Government also appeals this decision. We consolidated this appeal with the Government's earlier appeal of the preliminary injunction, and now address them both.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the appeal of the preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1), and over the appeal of the grant of the writ of habeas corpus pursuant to 28 U.S.C. § 2253(a). The entry of the preliminary injunction is reviewed for an abuse of discretion, *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006), and the grant of habeas relief is reviewed de novo, *Bowen v. Hood*, 202 F.3d 1211, 1218 (9th Cir. 2000).

## DISCUSSION

### I.

The first step in evaluating the Government's appeals is to determine whether Diouf was detained under § 236 or § 241 of the INA, 8 U.S.C. §§ 1226 and 1231, at the time the district court entered the preliminary injunction and granted habeas relief. As we recently explained in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), these statutes apply at different stages of an alien's detention. Section 1226(a) provides the Attorney General with discretionary authority to release aliens on bond or conditional parole prior to the removal period. *See id.* at 1059-60. Section 1231(a)(2), by contrast, mandates detention "during" the removal period established in § 1231(a)(1). *Id.* at 1059. Lastly, § 1231(a)(6) provides the Attorney General with discretionary authority to detain certain classes of aliens "beyond" the removal period, or to release them subject to the terms of supervision in § 1231(a)(3). *Id.*; *see also Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (describing these differences); *Casas-Castrillon v. Dep't of Homeland Sec.*, ___ F.3d ___, 2008 WL 2902026, at *2 (9th Cir. July 25, 2008) (same).

The Government argues that the district court abused its discretion by entering the preliminary injunction and granting habeas relief on the erroneous premise that Diouf was at the

time being detained prior to the removal period and, thus, under § 1226(a). Specifically, the Government contends that Diouf was being detained under § 1231(a)(2) because (1) Diouf's order of removal became administratively final on June 25, 2003, when he failed to depart within the voluntary departure period, (2) the administrative finalization of the order of removal initiated the 90-day removal period of § 1231(a)(1)(A), and (3) Diouf's filing of multiple unsuccessful petitions for review with this court extended the removal period pursuant to § 1231(a)(1)(C)[3] to mandate the entire portion of the detention that followed the first 90 days. Diouf argues in response that he was being detained prior to the removal period, and thus under § 1226, because he had a petition for review pending before this court and a judicial stay of removal in place when the district court granted injunctive and habeas relief. He claims that § 1231 did not apply because § 1231(a)(1)(B)(ii) dictates that his removal period begins only once this court enters a final order on his pending petitions for review—an event that has not yet occurred. For the reasons set forth below, we hold that Diouf was being detained under § 1231(a)(6) when the district court granted the writ of habeas corpus, and when it entered the preliminary injunction.

## A.

[1] We begin by noting that Diouf's order of removal is administratively final. Because the IJ issued an alternate order of removal in connection with the grant of voluntary departure, and Diouf did not timely appeal to the BIA, Diouf's order of removal became administratively final "upon over-

---

[3]This statute provides: "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

stay of the voluntary departure period." 8 C.F.R. § 1241.1(f). Diouf's voluntary departure period ended on June 24, 2003. Thus, the order of removal became administratively final on June 25, the first day of his overstay.

**B.**

**[2]** We further conclude that Diouf's detention was authorized under § 1231, rather than § 1226. Section 1231(a)(1)(B) provides that the removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Diouf's removal period thus began on June 25, 2003—the date his removal order became administratively final—unless §§ 1231(a)(1)(B)(ii) or (iii) dictate a later date. *See* 8 U.S.C. § 1231(a)(1)(B)(i). We hold that neither of them does. Section 1231(a)(1)(B)(ii) is inapplicable because, although Diouf's appeals to this court resulted in several stays of removal, those appeals did not entail judicial review of a *removal order*, as the plain text of the statute requires. Diouf never identified the order he sought to challenge in his first three appeals, and the fourth and fifth appeals challenged only the BIA's July 2006 denial of his motions to reopen. Diouf does not contend that § 1231(a)(1)(B)(iii) applies. Accordingly, Diouf's removal period began on June 25, 2003, pursuant to § 1231(a)(1)(B)(i).

Our recent decisions in *Prieto-Romero* and *Casas-Castrillon* support this conclusion. In *Prieto-Romero*, the petitioner had obtained a stay of removal from this court in an appeal that both remained pending and challenged the BIA's affirmance of his removal order. 534 F.3d at 1057. We held in part that the petitioner was detained under § 1226(a), rather than § 1231, because § 1231(a)(1)(B)(ii) dictated that the removal period had not commenced. *See id.* at 1059-61. However, we made clear that the statutory basis for the petitioner's detention would have been different if the pending petition for review had not challenged an administratively final order of removal, explaining that the "beginning of the removal period is not delayed by *every* judicially entered stay," *id.* at 1060 n.6 (emphasis in original), and that the "entry of a stay of removal for any . . . reason [other than review of a removal order]—for example, a stay entered while a court reviews an alien's § 2241 habeas petition or *petition for review of the BIA's denial of a motion to reopen*—does not prevent the removal period from beginning," *id.* (emphasis added). *Casas-Castrillon* followed this construction of § 1231(a)(1)(B)(ii). *See* 2008 WL 2902026, at *3 (holding that the petitioner was detained under § 1226 rather than § 1231 at the time he filed his habeas petition because he had obtained a stay of removal and was awaiting judicial review of his petition for review of a final order of removal).

## C.

Having determined that Diouf's removal period began on June 25, 2003, we now locate within § 1231(a) the specific basis for Diouf's detention on January 4, 2007, the date of the preliminary injunction, and on February 6, 2008, the date of the grant of habeas relief.

[3] Unsurprisingly, the rather lengthy procedural history of this case does not present a straightforward application of § 1231(a). The standard removal period should have ended on September 23, 2003—90 days after Diouf's order of removal

became final. *See* 8 U.S.C. § 1231(a)(1). ICE attempted to ensure Diouf's removal within this period by instructing him to appear for deportation on September 4, 2003. Diouf, however, refused to cooperate, and ICE was unable to apprehend him until March 29, 2005. Diouf again refused to leave the United States on May 26, 2005. His refusal to depart continued until at least July 20, when ICE warned him that such conduct could result in fines and imprisonment. We conclude that by frustrating ICE's efforts to effect removal in this manner, Diouf "conspire[d] or act[ed] to prevent [his] removal," and thereby extended his removal period. *Id.* § 1231(a)(1)(C). Similar acts of obstruction have previously warranted extensions. *See Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003) (alien refused to "cooperate fully and honestly with officials to secure travel documents"); *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003) (alien refused to fill out a passport application).

**[4]** Given that § 1231(a)(1)(C) applies, we must determine the effect of Diouf's obstructionism on the calculation of the removal period. In *Lema* and *Pelich*, we held that § 1231(a)(1)(C) extended the removal period for the duration of the obstruction. *Lema*, 341 F.3d at 856; *Pelich*, 329 F.3d at 1059. However, the conduct at issue in those cases was ongoing at the time the cases were decided. *See Lema*, 341 F.3d at 856; *Pelich*, 329 F.3d at 1059. As a result, neither *Lema* nor *Pelich* decided the effect of § 1231(a)(1)(C) in circumstances, such as Diouf's, that involve a closed period of obstruction. Because the latest evidence of Diouf's obstruction is the July 20, 2005 warning for failure to depart, we must decide how much of the removal period remained after that date.[4]

---

[4]We decline to find in the absence of positive evidence that Diouf continued to refuse to cooperate after July 20. Though an inference of subsequent obstruction may not be unreasonable, it is the burden of the government to document the conduct that extends the removal period under § 1231(a)(1)(C). Given what is at stake for the alien, we believe it inappropriate to allow the Government to satisfy its burden on inferences alone. *Cf. United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention . . . is the carefully limited exception.").

**[5]** The text of § 1231(a) permits two different approaches. First, the 90-day clock could toll for the duration of the activity that triggered § 1231(a)(1)(C), and, following the latest date of documented obstruction, Diouf's mandatory detention under § 1231(a)(2) could continue for the unexpended portion of the clock. Under this approach, Diouf's removal period and mandatory detention would have terminated on August 8, 2005—19 days after the July 20 warning letter—because 71 days of the removal period had already lapsed between the finalization of his order of removal and his failure to appear for removal on September 4, 2003. Alternatively, the 90-day clock could restart following the latest date of documented obstruction. This would mean that Diouf's removal period and mandatory detention under § 1231(a)(2) lasted until October 18, 2005—90 days after the July 20 warning letter.

We find the latter approach more appropriate. The purpose of the 90-day period is to afford the government a reasonable amount of time within which to make the travel, consular, and various other administrative arrangements that are necessary to secure removal. *See Khotesouvan v. Morones*, 386 F.3d 1298, 1300 (9th Cir. 2004). Using a single 90-day clock prior to and following a lengthy period of obstruction would, in many cases, frustrate that purpose by substantially truncating the amount of time within which the removal arrangements must be made. In Diouf's case, the passage of over twenty-two months between the original removal date of September 4, 2003, and the latest date of documented obstruction required the government to restart the process of executing his removal. Without a new 90-day clock, the government would have had only 17 days to complete its work, after which the statutory basis for Diouf's detention would have shifted from § 1231(a)(2) to § 1231(a)(6).[5]

---

[5]The question of whether to toll the original 90-day clock or start a new clock following a period of obstruction may carry more significant consequences in cases involving the removal of aliens to whom § 1231(a)(6) does not apply. It is possible that the government would have to release such aliens upon the expiration of the 90-day clock because § 1231(a) does not appear to otherwise provide for detention beyond the removal period.

The Government argues that Diouf extended the removal period under § 1231(a)(1)(C) even beyond October 18, 2005, by repeatedly and unsuccessfully petitioning for relief before this court. We reject this argument. Diouf's appeals to this court plainly did not constitute a "fail[ure] or refus[al] to make timely application in good faith for travel or other documents necessary to . . . departure." 8 U.S.C. § 1231(a)(1)(C). Nor were they a "conspir[acy] or act[ ] to prevent . . . removal." *Id.* As we explained in *Prieto-Romero*, § 1231(a)(1)(C) pertains only to intentionally obstructionist, bad faith tactics that are designed to frustrate the government's attempts to effectuate a removal order, not to an alien's good faith attempt to make use of legally available judicial review and remedies. 534 F.3d at 1060-61. Diouf's appeals fell within this latter category. His first three petitions were each dismissed for non-compliance with routine appellate procedures, but we attribute those results to Diouf's status at the time as a pro se litigant who was unfamiliar with the appellate process, not to bad faith. Moreover, the final two petitions resulted in a stay of removal. The entry of the stay signifies that, at the very least, the petitions have presented a "serious legal question[ ]" or have some "probability of success on the merits." *See Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998) ("We evaluate stay requests under the same standards employed by district courts in evaluating motions for preliminary injunctive relief.").

**[6]** Because Diouf's removal period ended on October 18, 2005, the statutory basis for his subsequent detention was § 1231(a)(6). The statute provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond

the removal period and, if released, shall be subject
to the terms of supervision in paragraph (3).

Section 1231(a)(6) governed at the time of the preliminary
injunction and the grant of habeas relief because Diouf's
detention on those dates occurred "beyond" the removal
period. Diouf, moreover, falls within the class of aliens to
whom the statute applies because he was ordered removed
and is "inadmissible under section 1182" of Title 8. *Id.*
§ 1231(a)(6).[6]

## II.

We next address whether Diouf was entitled to the writ of
habeas corpus. The Government contends that the district
court erred in granting the writ because the length of Diouf's
detention fell within the limits of § 1231(a)(6) and was con-
sistent with the implicit limitation that *Zadvydas v. Davis*, 533
U.S. 678 (2001), imposes on the Attorney General's detention
authority. Diouf argues that his detention had become indefi-
nite due to the absence of any certainty as to precisely when
it would conclude, and that it was therefore not authorized
under any immigration detention statute. *See Zadvydas*, 533
U.S. 678.

[7] We agree with the Government. As we have explained,
*see supra* § I.C, Diouf's detention was authorized by
§ 1231(a)(6) because he was ordered removed and was inad-
missible under § 1182. An alien is entitled to habeas relief
after a presumptively reasonable six-month period of deten-

---

[6]Section 1182 provides that an alien convicted of "a violation of . . . any
law or regulation of a State, the United States, or a foreign country relating
to a controlled substance (as defined in section 102 of the Controlled Sub-
stances Act (21 U.S.C. § 802)), is inadmissible." 8 U.S.C. § 1182(a)(2)(A)
(i)(II). Diouf's conviction for possession of marijuana under Washington
law falls within this provision because marijuana is a "controlled sub-
stance" within the meaning of 21 U.S.C. § 802(6). *See* 21 U.S.C. § 812
Schedule I(c)(10).

tion under § 1231(a)(6) only upon demonstration that the detention is "indefinite"—i.e., that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Clark v. Suarez-Martinez*, 543 U.S. 371, 377-78 (2005) (extending *Zadvydas* to aliens who are detained under § 1231(a)(6) and inadmissible under § 1182). Diouf's detention undoubtedly extended beyond the presumptively reasonable period of six months. However, he fails to demonstrate that there was "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In *Prieto-Romero*, we construed this language to require the alien to show that he would be unremovable even if the government defeated his petition for review. 534 F.3d at 1063. The record provides no reason to believe such would be the case with Diouf. There is no evidence, for example, that Senegal would refuse to accept him, or that his removal is barred by our own laws. *See id.* (citing *Zadvydas*, 533 U.S. at 697). Indeed, ICE successfully completed the arrangements for Diouf's removal prior to the originally scheduled removal date of September 4, 2003, and again on May 26, 2005; Diouf was not removed at those times solely because of his own refusal to cooperate. The government, therefore, could continue to have an interest in detaining Diouf to effect his removal, and the detention remained authorized by § 1231(a)(6). *Zadvydas*, 533 U.S. at 699; *Prieto-Romero*, 534 F.3d at 1065. That the detention did not have a certain end date does not change the analysis. *Id.* at 1063; *see also Casas-Castrillon*, 2008 WL 2902026, at *5 (concluding that an alien's detention was not unauthorized by statute on the basis of the length of his nearly seven-year detention because nothing would prevent his removal if he were ultimately unsuccessful in his then-pending petition for review).

## III.

The remaining question is whether the district court abused its discretion by preliminarily enjoining the IJ to hold a bond

hearing at which the Government was required to release Diouf unless it could prove by clear and convincing evidence that Diouf was a flight risk or a danger to the community. As we noted in *Casas-Castrillon*, "[t]here is a difference between detention being authorized and being necessary as to any particular person." 2008 WL 2902026, at *5. The Government contends that the injunction was an abuse of discretion because Diouf was subject to mandatory detention under § 1231(a)(2) and was, therefore, ineligible for release on bond. The Government also argues that even if bond were potentially available, the injunction incorrectly required the IJ to place on ICE the burden of proving Diouf's *ineligibility* for release, rather than place on Diouf the burden of proving his *eligibility*. Diouf argues that he was entitled to the hearing as a matter of due process, and that bond was properly granted.

**[8]** We hold that the injunction constituted an abuse of discretion insofar as it relied on the erroneous premise that Diouf was being detained under § 1226. As we have explained, the detention at the time of the injunction occurred under § 1231(a)(6), not § 1226. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008) (explaining that a district court abuses its discretion if it enters preliminary injunctive relief because of a misapprehension of the law governing the underlying issues in the litigation).

Whether the injunction was also an abuse of discretion specifically because it ordered a bond hearing is another matter. Contrary to the Government's argument, Diouf's detention under § 1231(a)(6) did not render him categorically ineligible for release on bond. Section 1231(a)(6) provides the Attorney General with the authority either to detain an alien beyond the removal period *or* to release him subject to the terms of supervision specified under § 1231(a)(3). We have specifically construed § 1231(a)(6) to permit release on bond. *See Doan v. INS*, 311 F.3d 1160, 1162 (9th Cir. 2002). The regulations that implement the statute also expressly permit bond as a condition of release. *See* 8 C.F.R. § 214.5(b). Therefore, we

reject the Government's suggestion that Diouf was statutorily ineligible for release on bond.

It does not necessarily follow, however, that the district court was correct in ordering the Attorney General to conduct a bond hearing, or that the Government was required to release Diouf on bond unless the Government could prove by clear and convincing evidence that Diouf was a danger to the community or a flight risk. Section 1231(a)(6) creates no express limit on the duration of post-removal period detention; nor does it specify that aliens are entitled to release unless they receive a bond hearing such as the one ordered by the district court. The statute states simply that the Attorney General "may" detain certain classes of aliens beyond the removal period.

[9] We decline to decide in the first instance whether aliens such as Diouf, who are detained under § 1231(a)(6), are entitled to receive bond hearings and to obtain release on bond unless the Government proves that they are a danger or a flight risk. The district court granted such relief under the erroneous conclusion that Diouf was detained under § 1226(a), and therefore did not reach the question of what process must be provided to aliens detained under § 1231(a)(6). We note, however, that we considered a somewhat similar question in *Casas-Castrillon*. There, the issue was whether § 1226(a) authorizes the Attorney General to subject lawful permanent residents to prolonged detention pending judicial review of a final order of removal without affording an opportunity for an individualized determination on the necessity of the detention before a neutral decision maker. 2008 WL 2902026, at *6. Because prolonged detention of a lawful permanent resident in such circumstances would be "constitutionally doubtful," we construed § 1226(a) as "*requiring* the Attorney General to provide the alien with . . . a [bond] hearing." *Id.* at *7 (emphasis in original).

**[10]** Given the limited holding of *Casas-Castrillon*, it remains unclear whether due process concerns would require a similar construction of § 1231(a)(6) in a case involving an alien, such as Diouf, who is not a legal permanent resident and who, unlike the alien in *Casas-Castrillon*, has been ordered removed by the BIA, has exhausted his opportunities to challenge that final order of removal directly, and has previously been granted release on bond and had the bond cancelled for failure to timely depart. The district court did not address the question of whether the post-order custody review process that Diouf received satisfies the requirements of § 1231(a)(6) or the Due Process Clause, and neither does the briefing provided by the parties. Because we do not believe it prudent to decide the question under these circumstances, we vacate the preliminary injunction and remand so that the district court can decide in the first instance, with possible additional fact-finding and more focused briefing from the parties, whether Diouf is entitled to an individualized determination, before a neutral decision maker, of the necessity of his detention under § 1231(a)(6).[7]

## CONCLUSION

For the foregoing reasons, the grant of the writ of habeas corpus is REVERSED, and the preliminary injunction is VACATED and REMANDED for further proceedings consis-

---

[7]We note that the district court failed to support its original preliminary injunction with findings of fact and conclusions of law, as it was required to do. *See* Fed. R. Civ. P. 52(a) (providing that a district court that grants a preliminary injunction "must find the facts specifically and state its conclusions of law separately"); *see also* Fed. R. Civ. P. 65(d). Findings of fact and conclusions of law are important to help the parties understand the reasons for the decision and to facilitate meaningful appellate review. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 423 (4th Cir. 1999); *see also Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a).").

tent with this opinion.

REVERSED in part; VACATED and REMANDED in part.