Terence ENOH, Petitioner,

v.

Jefferson B. SESSIONS III, Attorney General of the United States; Acting Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; Department of Homeland Security; and Todd Tryon, Facility Director, Buffalo Federal Detention Facility, Respondents.[1]

16–CV–85(LJV)

United States District Court,
W.D. New York.

Signed 02/22/2017

---

1. The Clerk of Court shall amend the caption as set forth above. See Fed. R. Civ. P. 25(d) (automatic substitution of public officers).

Terence Enoh, Batavia, NY, pro se.

Gail Y. Mitchell, U.S. Attorney's Office, Buffalo, NY, for Respondents.

## ORDER

Lawrence J. Vilardo, United States District Judge

The petitioner, Terence Enoh, is a civil immigration detainee currently held at the Buffalo Federal Detention Facility. On January 27, 2016, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that he is being detained in violation of the Constitution or laws of the United States. Docket Item 1. On February 22, 2016, he filed an amended petition. Docket Item 4. This Court (Hon. John T. Curtin) ordered the government to respond, and the government did so on April 25, 2016. Docket Items 8 & 9. On April 12, 2016, this case was transferred from Judge Curtin to the undersigned.

As set forth below, Enoh's request for a bond hearing under *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), is GRANTED, and his petition is otherwise dismissed without prejudice.

## BACKGROUND

Enoh's lengthy removal proceedings, which began in May 2006, are based on his admission to the United States to attend the University of Wisconsin and his failure to attend classes. *See* Docket Item 8–1 at 2–3 (¶¶ 5–7); Docket Item 8–2 at 37 (citing Section 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA")). On January 15, 2013, an Immigration Judge ordered Enoh removed from the United States and denied his application for asylum and withholding of removal. Docket Item 8–2 at 3. Enoh appealed, and on November 18, 2014, the Board of Immigration Appeals ("BIA") dismissed the appeal. *Id.* at 4. Therefore, according to Enoh's petition, "the order of removal became final" on that date. Docket Item 4 at 7 (¶ 14).

Enoh was not taken into custody until he was arrested on June 15, 2015. *See* Docket Item 4 at 3 (¶ 9). Based on the most recent information available to this Court, Enoh has been detained since then, ostensibly pursuant to Section 241 of the INA, codified at 8 U.S.C. § 1231 (entitled "Detention and removal of aliens ordered removed"). *See, e.g.*, Docket Item 9 at 2 (respondents' memorandum arguing that Enoh "is lawfully detained . . . under [INA] § 241"); Docket Item 8–2 at 9 (notice extending removal period under INA § 241(a)(1)(C)).

Once Enoh was in custody, the Department of Homeland Security ("DHS") promptly scheduled him to be removed from the United States. But on September 15, 2015—according to the respondents and DHS records—Enoh refused to be removed. *See* Docket Item 8–2 at 4, 9–10. The respondents do not provide much detail on what, exactly, occurred. Enoh, however, says that he told ICE officers that he believed he would be killed if he returned to his native country of Cameroon, either because of his political affiliation or because of his religion.[2] Docket Item 10 at 5. ICE officers told Enoh that he would be

2. Enoh apparently made similar claims during earlier proceedings, but the immigration courts found the claims not credible. *See, e.g.*, Docket Item 11–9.

punished if he failed to comply with the removal, but Enoh responded—in effect—that he would prefer the punishment. *See id.*

Thus, Enoh "admits that he did not leave as planned" and "take[s] responsibility for his actions." *Id.* at 6. But he "disputes any contentions" that he was not cooperative. *Id.* About a week after Enoh refused to return to Cameroon, on September 23, 2015, DHS reviewed Enoh's detention, determined that he was a flight risk, and therefore decided to continue to hold him in custody. *See* Docket Item 8–2 at 12–14; *see generally* 8 U.S.C. § 1231(a)(6) (alien may be detained beyond removal period if "unlikely to comply with the order of removal").

During Enoh's detention, he attempted to reopen his administrative removal proceedings. On June 26, 2015, he filed a "Motion to Reopen" with the BIA, which the BIA denied on July 27, 2015. Docket Item 8–1 at 5 (¶ 18). Then, on August 24, 2015, he filed a second "Motion to Reopen/Reconsider," which he argued fell "within the exception to the time and number limitations for motions to reopen to apply or reapply for asylum or withholding of removal based on changed conditions or circumstances arising in [Cameroon]." Docket Item 11–9. The BIA denied that motion on October 5, 2015. *Id.* On October 30, 2015, Enoh filed a petition with the United States Court of Appeals for the Second Circuit, asking the court to review that latest BIA order. Docket Item 8–1 at 7 (¶ 28). A short time later, he also filed a motion for a stay of removal with the Second Circuit. *Id.*

Due to a forbearance agreement between DHS and the Second Circuit, DHS was thereafter prevented from executing the order of removal. *Id.*; *see generally In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Sec-*ond Circuit, 702 F.3d 160 (2d Cir. 2012). According to the respondents, the forbearance agreement was—as of the date of their responding papers, April 25, 2016—the only obstacle preventing Enoh's immediate removal to Cameroon. *See* Docket Item 8–1 at 9 (¶ 36); *see also id.* at 8–9 (¶ 35) (noting that significant numbers of immigrants have been repatriated to Cameroon).

Notwithstanding the forbearance agreement, the Second Circuit later issued an order, dated November 10, 2016, formally granting Enoh's motion for a stay of removal. Docket Item 21–1 at 2. That order also denied the respondents' motion for summary denial of Enoh's petition for review of the BIA's October 5, 2015 order. *See id.* As of the date of this decision, the petition for review remains pending before the Second Circuit. *See* 2d Cir. Docket No. 15–3494.

## DISCUSSION

In his petition to this Court, Enoh claims that he has been detained for longer than six months and that his "removal to Cameroon or any other country is not significantly likely to occur in the reasonably foreseeable future." Docket Item 4 at 19 (¶ 34). He therefore claims that he is being unlawfully detained in violation of the Due Process Clause of the Fifth Amendment and in contravention of 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), and he requests "an order requiring respondents to promptly release [him]." Docket Item 4 at 19, 22. "In the alternative," he requests "an order [requiring] a bond hearing," pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). Docket Item 4 at 19, 22.

In response, the government maintains that DHS is lawfully and properly detain-

ing Enoh and that he has received all the due process to which he is entitled. *See* Docket Item 9. The government also maintains that Enoh is not entitled to a bond hearing under *Lora* because he is being detained pursuant to 8 U.S.C. § 1231, not § 1226—two detention statutes that, according to the respondents, "address[ ] different goals." Docket Item 9 at 21–22.

## I. THE STATUTORY SCHEME

### A. 8 U.S.C. § 1231

Under Section 241 of the INA, codified at 8 U.S.C. § 1231, after an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, there is a 90–day removal period during which an alien "shall" be detained. 8 U.S.C. § 1231(a)(1)–(2). If the government fails to remove the alien during that period, the alien "may be detained beyond the removal period" if the government determines that the alien is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

■ In *Zadvydas v. Davis*, the Supreme Court observed that the text of § 1231(a)(6) does not contain an explicit time limit and that "the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous" or a significant flight risk. *Zadvydas*, 533 U.S. at 692, 121 S.Ct. 2491 (citing 8 C.F.R. § 241.4(d)(1)). The Court further observed that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690, 121 S.Ct. 2491 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). The Court therefore read § 1231(a)(6) as permitting detention

only for the period reasonably necessary to secure an alien's removal. 533 U.S. at 699, 121 S.Ct. 2491. "Thus, if removal is not reasonably foreseeable," courts "should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700, 121 S.Ct. 2491.

■ To guide lower courts, the *Zadvydas* Court created a presumption that six months of detention under § 1231(a)(6) is reasonable. *See* 533 U.S. at 700–01, 121 S.Ct. 2491. But after six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701, 121 S.Ct. 2491.

### B. 8 U.S.C. § 1226

The detention of aliens pending removal proceedings—i.e., before the alien is subject to an administratively final order of removal—is governed by Section 236 of the INA, codified at 8 U.S.C. § 1226. For aliens convicted of certain crimes, detention pending removal proceedings is mandatory (i.e., without bond) under 8 U.S.C. § 1226(c). For other aliens (including Enoh), detention pending removal proceedings is discretionary, subject to a bond determination, under 8 U.S.C. § 1226(a).

■ The Second Circuit recently examined mandatory detention under § 1226(c) in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), and expressed concern that "a noncitizen detained under [that statute] who contests his or her removal regularly spends many months and sometimes years in detention due to the enormous backlog in immigration proceedings." 804 F.3d at 605. Mindful of the Due Process Clause, and reminiscent of *Zadvydas*, the Second Circuit therefore read that statute "to contain an implicit temporal limitation." *Id.* at

606. "Specifically," the Second Circuit "join[ed] the Ninth Circuit in holding that mandatory detention for longer than six months without a bond hearing affronts due process." *Id.* (citing *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)).[3] As a result, aliens detained under § 1226(c) for six months are entitled to a bond hearing and must be released on bail "unless the government establishes by clear and convincing evidence that [the alien] poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616.

Although *Lora* involved an alien subject to mandatory detention under § 1226(c), this Court is aware of no reason why an alien detained for more than six months under § 1226(a) would have less of an entitlement to a bond hearing with the burden on the government to prove the need for detention by clear and convincing evidence. *See generally Rodriguez*, 715 F.3d at 1134–35 (discussing Ninth Circuit's previous holding, in *Casas–Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), that an alien subject to prolonged detention under § 1226(a) is entitled to bond hearing).[4] If anything, an alien who is subject only to discretionary detention under § 1226(a) would seem to have a greater liberty interest than a criminal alien subject to mandatory detention under § 1226(c).

## II. WHICH STATUTE GOVERNS ENOH'S DETENTION?

Whether Enoh's detention is governed by § 1231 or § 1226 may impact whether he is entitled to relief—and if so, the form of that relief. For example, it may impact whether he is entitled to a bond hearing. *See Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016) (whether removal order was administratively final "determines whether Guerra's detention is governed by § 1231(a) or instead by § 1226(a), and, in turn, whether he was eligible to be released on bond.")[5]; *Argueta Anariba v. Shanahan*, 190 F.Supp.3d 344, 349 (S.D.N.Y. 2016) ("Argueta's constitutional and statutory entitlement to a bond hearing, and the burdens of proof applicable to such a hearing, depends on which portion

3. The *Rodriguez* decision (sometimes referred to as *Rodriguez II*) cited in *Lora* is part of a line of Ninth Circuit decisions concerning the detention of aliens pending removal proceedings or removal. After the latest of those decisions—*Rodriguez III*—the Supreme Court granted certiorari, hearing oral argument on November 30, 2016. *See Jennings v. Rodriguez*, No. 15–1204. The issues before the Supreme Court in that case are substantially the same as those addressed in *Lora*.

4. The *Rodriguez* court also explained that because it had read a time limit into § 1226(c), the authority for the detention of an alien who is initially detained under that statute reverts to § 1226(a) after the time limit's expiration. 715 F.3d at 1138. If this Court were to follow that reasoning, then it actually is § 1226(a) that governs the detention of an alien if the alien (1) was initially subject to detention under § 1226(c) and (2) becomes entitled to a bond hearing under *Lora*.

5. Enoh and amicus curiae New York Civil Liberties Union suggest that it does not matter whether Enoh is detained under § 1226 or § 1231(a)(6) when it comes to his entitlement to a bond hearing. That would seem to be correct in the Ninth Circuit. *See Diouf v. Napolitano*, 634 F.3d 1081, 1084 (9th Cir. 2011) ("We hold that individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)."). But despite some broad language in *Lora* and that decision's citation of Ninth Circuit authority, the Second Circuit's more recent decision in *Guerra* suggests that it has not adopted that approach. *See* 831 F.3d at 62 ("After the removal period has expired, detention is discretionary, but a bond hearing is not authorized if removal is 'reasonably foreseeable.'") (citing § 1231(a)(6) and *Zadvydas, supra*).

of the statutory scheme covers his current detention.").

Moreover, if Enoh is not subject to a final order of removal and his detention is not governed by § 1231, then his petition may be premature to the extent that he is seeking relief under *Zadvydas. See Adams v. Holder*, 2012 WL 1999488, at *3 (W.D.N.Y. June 4, 2012) ("Because of the ongoing stay of removal in this case, neither [§ 1231's] 90–day removal period nor the presumptively reasonable six-month period [under *Zadvydas*] has begun. ... [T]herefore, [petitioner's] constitutional challenges to his detention under *Zadvydas* are premature.").

Thus, determining which statute governs Enoh's detention is a threshold issue in this matter.

### A. The Parties' Positions

The government takes the position that "DHS is lawfully and properly detaining Enoh pursuant to 8 U.S.C. § 1231(a)(6)." Docket Item 9 at 23; *see also id.* at 21 (arguing that Enoh "is not an alien in pre-final order detention under INA § 236, 8 U.S.C. § 1226"). By virtue of that fact, the government argues that *Lora* does not apply and that Enoh is not entitled to a bond hearing. Docket Item 9 at 21 ("There is no Second Circuit authority that supports the argument asserted in Enoh's petition that he is entitled to release on bond."). The government apparently did not give serious consideration to the possibility that § 1226 may govern Enoh's detention.[6]

The government's position on whether Enoh is entitled to a bond hearing mirrors that of the Immigration Judge who previously denied Enoh's requests for such a hearing. When Enoh requested a bond hearing in January 2016, the Immigration Judge issued a one-page form decision, simply stating: "Court lacks jurisdiction. Respondent is not a *Lora* case and is under a final order of removal." Docket Item 8–2 at 2. And when Enoh submitted another request for a bond hearing nearly a year later—this time after the Second Circuit had issued its November 10, 2016 order formally staying his removal—the Immigration Judge issued another one-page form decision that was substantially the same as the previous one. Docket Item 21–1 at 18.

Enoh and amicus curiae New York Civil Liberties Union, however, take the position that, due to the Second Circuit's November 10, 2016 order staying Enoh's removal, his detention actually is governed by 8 U.S.C. § 1226, not § 1231.[7] They cite *Wang v. Ashcroft*, 320 F.3d 130 (2d Cir. 2003), for the proposition that "where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under [8 U.S.C. § 1226] until the court renders its deci-

---

**6.** Most of the government's arguments concern whether Enoh is entitled to relief under *Zadvydas*. For example, the government argues that his removal is reasonably foreseeable because Enoh simply is waiting for the Second Circuit to rule on his petition for review. The government further argues that Enoh's continued detention cannot violate Due Process because any delay is of his own doing, pointing to Enoh's refusal to be removed in September 2015 and his choice to try to reopen removal proceedings. This Court need not reach those arguments if Enoh's petition is premature or if he receives a *Lora* bond hearing and is released.

**7.** The Second Circuit had not yet granted a formal stay at the time Enoh filed the instant petition. Enoh's petition therefore suggested that the forbearance agreement between the Second Circuit and DHS, without more, may have the same effect as the formal stay. After the Second Circuit issued the formal stay, Enoh filed a motion for declaratory or injunctive relief, which attached the Second Circuit's order.

sion." 320 F.3d at 147 (applying 8 U.S.C. § 1231(a)(1)(B)(ii)). And for that reason, among others, they argue that Enoh is entitled to a bond hearing under *Lora.*

## B. Analysis

 The distinction between § 1226 and § 1231 essentially comes down to whether an alien is subject to a final order of removal. As previously noted, § 1231 provides for a 90-day removal period, during which an alien "ordered removed" shall be detained under § 1231(a)(2), and after which the alien "may" be detained under § 1231(a)(6). Typically, the 90-day removal period begins on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). But "[i]f *the removal order is judicially reviewed* and if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added).

Here, Enoh and amicus assume that Enoh's petition for review pending in the Second Circuit and the resulting stay mean that his "removal order" is being "judicially reviewed." But in a literal sense, Enoh's Second Circuit petition does not request review of a "removal order." Indeed, Enoh did not file a timely petition for review after the Immigration Judge ordered his removal on January 15, 2013, nor did he file one after the BIA dismissed his appeal from that order on November

18, 2014. In contrast, Enoh's Second Circuit petition requests review of the BIA's order dated October 5, 2015—an order that denied a second motion to reopen his removal and/or asylum proceedings. The briefing in the Second Circuit is focused on the propriety of *that* order, not the removal order that was administratively final on November 18, 2014. *See* 2d Cir. Docket No. 15-3494.

In other words, because Enoh did not seek judicial review of his 2013 removal order or the 2014 BIA dismissal of his appeal, his removal order became "administratively final" on November 18, 2014. For that reason, from June 15, 2015 (the date of his arrest) until the Second Circuit stayed his removal on November 10, 2016—or perhaps until the forbearance agreement precluded his actual removal[8] —Enoh was detained pursuant to § 1231. The question now is whether the stay that resulted from Enoh's petition for review of the BIA's denial of his motion to reopen caused the authority for his detention to revert to § 1226.

There appears to be no governing Second Circuit authority that is precisely on point. The dicta in *Wang* that Enoh cites offers little guidance, since it discusses a stay pending "review of an administrative removal order," 320 F.3d at 147, and simply mirrors the language of 8 U.S.C. § 1231(a)(1)(B)(ii). *Guerra v. Shanahan,* 831 F.3d 59 (2d Cir. 2016), which examined

---

8. Until the Second Circuit issued the formal stay, the question before this Court was whether the forbearance agreement alone caused the authority governing Enoh's detention to revert to § 1226. District courts in this circuit have come to different conclusions on that question, although all the cases seem to involve petitions for review of removal orders—*not* motions to reopen administratively final removal orders. *Compare Mathews v. Philips,* 2013 WL 5288166 (W.D.N.Y. Sept. 18, 2013) (detention of alien subject to final order of removal was governed by § 1231, regardless of forbearance agreement), *and Leslie v. Herron,* 2010 WL 4226561 (W.D.N.Y. Oct. 26, 2010) (same), *with Argueta Anariba,* 190 F.Supp.3d 344 (finding that forbearance policy operates to shift statutory basis for detention from 8 U.S.C. § 1231 to § 1226 and that petitioner was entitled to *Lora* bail hearing), *and Rone v. Shanahan,* 2016 WL 1047393 (S.D.N.Y. Mar. 10, 2016) (same), vacated on grounds of mootness No. 16-1541, 2016 WL 7668454 (2d Cir. Nov. 15, 2016); *see also Khatiashvili v. Decker,* 2016 WL 5793250, at *3 n.7 (S.D.N.Y. Oct. 3, 2016).

"an issue of first impression in this Circuit: whether a reinstated removal order is 'administratively final' during the pendency of withholding-only proceedings," is instructive and is discussed in more detail below.[9] There is, however, a Ninth Circuit case that is squarely on point and worth addressing first.

In *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir. 2008) (hereinafter *Diouf I*), the petitioner had obtained "several stays of removal" from the Ninth Circuit, so the district court decided that § 1226 governed the petitioner's detention. 542 F.3d at 1229–30. The district court then ordered the government "to conduct a bond hearing" and to release the petitioner on bond unless it "could prove by clear and convincing evidence that [he] was a danger to the community or a flight risk." *Id.* at 1234. The Ninth Circuit reversed, holding that the petitioner's "detention was authorized under § 1231, rather than § 1226," because the stays of removal did not result from "judicial review of a *removal order*, as the plain text of [8 U.S.C. § 1231(a)(1)(B)(ii)] requires." *Id.* at 1229–30. Instead, like Enoh's petition for review here, the *Diouf I* petitioner's appeals "challenged only the BIA's ... denial of his motions to reopen." *Id.* at 1230.

That authority from the Ninth Circuit might seem to be particularly persuasive here, but on closer inspection it is not. At the time *Diouf I* was decided, the Ninth Circuit had not yet answered the question of "whether aliens ... who are detained under § 1231(a)(6), are entitled to receive bond hearings and to obtain release on bond unless the Government proves that they are a danger or a flight risk." *Id.* at 1234. In other words, it was unsettled in the Ninth Circuit whether the choice between § 1226 and § 1231(a)(6) would make any difference, and the *Diouf I* court merely "decline[d] to decide" that issue "in the first instance." *Id.* On remand, the district court decided that issue, finding that an alien detained under § 1231(a)(6) was *not* entitled to a bond hearing. But the Ninth Circuit reversed again in *Diouf II*, concluding "that individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)." 634 F.3d at 1084.[10] Thus, although *Diouf I*'s holding is directly on point and suggests applying § 1231, that case drew a distinction that ultimately did not matter and that the Ninth Circuit has had little reason to reexamine.

9. In *Guerra*, an alien previously removed from the United States re-entered and was detained. While he "was in detention, an asylum officer concluded that [he] had a reasonable fear of returning to Guatemala and referred [his] case ... for a determination as to whether [he] was eligible for withholding of removal." *Guerra*, 831 F.3d at 61. As the *Guerra* court explained, "[i]f an alien subject to a reinstated removal order expresses to an asylum officer a reasonable fear of returning to the country specified in the removal order, the case is referred to an IJ, for 'withholding-only' proceedings." *Id.* "In withholding-only proceedings, 'all parties are prohibited from raising or considering any ... issues' other than withholding or deferral of removal." *Id.* at 61–62 (quoting 8 C.F.R. § 1208.2(c)(3)(i)). "The IJ's order concerning withholding can

be appealed to the [BIA], and from there, by a petition for review, to a court of appeals." *Guerra*, 831 at 62,. Enoh, by contrast, did not re-enter after being removed and appears to have previously attempted to pursue asylum and/or withholding issues. As noted above, in the "Motion to Reopen/Reconsider" that was denied by the BIA's October 5, 2014 order, Enoh argued that the motion fell "within the exception to the time and number limitations for motions to reopen to apply or reapply for asylum or withholding of removal based on changed conditions or circumstances arising in [Cameroon]," among other things. Docket Item 11–9.

10. As discussed in footnote 5, *supra*, this Court declines to follow *Diouf II* at this time.

No reported decisions in this circuit appear to have cited *Diouf I*, but at least one other court has explicitly rejected it:

> In the absence of Third Circuit authority holding otherwise, the Court declines to find that our Circuit would follow the Ninth Circuit and distinguish between a stay issued in connection with direct attack on a final order of removal and a stay issued in connection with a motion to reopen a final order of removal. As a result, the Court finds that pursuant to *Leslie, supra,* Petitioner's detention is presently governed by 1226(a) and he is entitled to the protections afforded under that provision.
>
> Those protections include a bond hearing before an immigration judge.

*Kudishev v. Aviles*, 2015 WL 8681042, at *4 (D.N.J. Dec. 10, 2015). *Id.* at *4–5. In support of its conclusion, the *Kudishev* court also noted "that denials of final orders of removal and denials of motions to reopen final orders of removal are not treated differently for jurisdictional purposes even though Congress has explicitly granted federal courts the power to review 'any final order of removal' under 8 U.S.C. § 1252(a)(1)." *Kudishev*, 2015 WL 8681042, at *4 n.1 (citing *Cruz v. U.S Att'y Gen.*, 452 F.3d 240, 246 (3d Cir. 2006), and *Patel v. U.S Att'y Gen.*, 334 F.3d 1259, 1261 (11th Cir. 2003)).

This Court finds that reasoning persuasive. In fact, the Second Circuit employed similar reasoning when choosing § 1226— not § 1231—in *Guerra v. Shanahan*:

> Although this case presents an issue of first impression, our precedent is not without guidance. We have held, in the similar context of asylum-only proceedings, that a denial of asylum is judicially reviewable even though it is not accompanied by a "final order of removal." We held that a contrary decision would "elevate form over substance."

831 F.3d at 63 (quoting *Kanacevic v. INS*, 448 F.3d 129, 133–35 (2d Cir. 2006)); *see also Vasilia v. Keisler*, 248 Fed.Appx. 247, 248 (2d Cir. 2007) (summary order) ("As an initial matter, although Vasilia is challenging the denial of relief in 'asylum-only' proceedings, this Court nonetheless has jurisdiction to review the denial of his motion to reopen under 8 U.S.C. § 1252(a)(1) because the denial of relief in these circumstances is the functional equivalent of a removal order.").

Even though the case at bar concerns a stay resulting from review of an order denying a motion to reconsider/reopen, as opposed to newly commenced withholding-only proceedings, *Guerra* nevertheless is instructive. Indeed, in addition to relying on previous rulings interpreting similar language regarding final orders of removal, the Second Circuit in *Guerra* found that the structure of the detention statutes supported "the conclusion that [the alien's] detention during the pendency of his withholding-only proceedings is detention pursuant to 8 U.S.C. § 1226(a)." *Guerra*, 831 F.3d at 64. In other words,

> 8 U.S.C. § 1226(a) authorizes the detention of aliens whose removal proceedings are ongoing. By contrast, 8 U.S.C. § 1231(a) is concerned mainly with defining the 90-day removal period during which the Attorney General "shall remove the alien." The former provision is the more logical source of authorization for the detention of aliens currently in withholding-only proceedings.

*Guerra*, 831 F.3d at 62–63.

Here, at least since the Second Circuit stayed Enoh's removal, his removal proceedings have been "ongoing," and it therefore is more logical to view his detention as being under 8 U.S.C. § 1226(a). Indeed, if his petition for review in the Second Circuit is successful, he will have a chance to obtain the cancellation of his

removal. *See Guerra*, 831 F.3d at 63 ("Because the alien's 'remanded applications . . . if granted, effectively would result in the cancellation of any order removing [him],' the order was not final.") (quoting *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009)). And that chance may not be insignificant, considering that the Second Circuit's order of November 10, 2016, not only granted a formal stay but also denied the respondents' motion for a summary disposition. *See generally Diouf I*, 542 F.3d at 1232 (stay "signifies that, at the very least, the petition[ ] ha[s] presented a serious legal question or ha[s] some probability of success on the merits") (internal quotation marks, alteration, and citation omitted). What is more, in light of federal and immigration court backlogs, it could take Enoh a very long time to pursue that chance, implicating his due process rights. *See Lora, supra*.

## CONCLUSION

For all the above reasons, this Court concludes that 8 U.S.C. § 1226(a) governs Enoh's detention and that he is entitled to a bond hearing. Based on the most recent information available to this Court, it appears that Enoh has not received one.

Therefore, **within 10 days of the date of this order**, the government must provide Enoh a bond hearing before an Immigration Judge. At that hearing, Enoh will be entitled to release on bail unless the government establishes by clear and convincing evidence that he poses a risk of flight or a risk of danger to the community.[11]

Alternatively, **within 10 days of the date of this order**, the government may

either (1) file a response to Enoh's motion for declaratory or injunction relief demonstrating that Enoh already has received such a bail hearing, or (2) stipulate with Enoh to a bond amount.[12]

**Within 3 days of holding a bond hearing or stipulating to a bond amount pursuant to this order**, the government shall file a status report with this Court.

To the extent Enoh argued that he is subject to a final order of removal and is being detained in violation of the U.S. Constitution, *see generally Zadvydas, supra*, his petition is premature and is dismissed without prejudice.

Enoh's motions docketed as items 12, 14, 15, and 17 are denied as moot, in light of this order. The motion by the New York Civil Liberties Union to appear amicus curiae (Docket Item 22) is granted. Because the amicus brief was attached to the motion, filing a separate brief is unnecessary.

SO ORDERED.

---

11. There is no reason the standard of proof in *Lora, supra*, should not also apply here, where an alien has been subject to prolonged detention under § 1226(a) rather than § 1226(c). This Court expresses no opinion concerning

the standard of proof in initial bond/custody determinations under § 1226(a).

12. *See Khatiashvili*, 2016 WL 5793250, at *4.