**Alejandro RODRIGUEZ, Petitioner–
Appellant,**

**v.**

**James HAYES, Immigration and Customs Enforcement Los Angeles District Field Officer Director; George Molinar, Chief of Detention and Removal Operations, San Pedro Detention Facility; Janet Napolitano,\***

---

\* Janet Napolitano is substituted for her predecessor, Michael Chertoff, as Secretary of the Department of Homeland Security, pursuant to Fed. R.App. P.43(c)(2).

Secretary, Department of Homeland Security; Eric H. Holder Jr., Attorney General; Paul Walters; Lee Baca, Sheriff of Los Angeles County; Sammy Jones, Chief of the Custody Operations Division of the Los Angeles County Sheriff's Department, Respondents–Appellees.

No. 08–56156.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2009.

Filed Aug. 20, 2009.

Peter J. Eliasberg and Ahilan T. Arulanantham (argued), American Civil Liberties Union Foundation of Southern California, Los Angeles, CA; Judy Rabinowitz and Cecillia D. Wang, American Civil Liberties Foundation Immigrants' Rights Project, New York, NY, and San Francisco, CA; Jayashri Srikantiah, Stanford Law School Immigrants' Rights Clinic, Stanford, CA; and Steven A. Ellis, William

Tran, and Brian K. Washington, Sidley Austin LLP, Los Angeles, CA, for the petitioner-appellant.

Gregory G. Katsas, Assistant Attorney General, Civil Division; David J. Kline, Director, District Court Section; Gjon Juncaj (argued), Senior Litigation Counsel; and Nancy N. Safavi, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for the respondents-appellees.

Before: B. FLETCHER, RAYMOND C. FISHER and RONALD M. GOULD, Circuit Judges.

BETTY B. FLETCHER, Senior Circuit Judge:

Petitioner Alejandro Rodriguez ("Petitioner") seeks a writ of habeas corpus on behalf of himself and a class of aliens detained in the Central District of California for more than six months without a bond hearing while engaged in immigration proceedings. Petitioner requests injunctive and declaratory relief providing individual bond hearings to all members of the class. Petitioner appeals the district court denial without explanation of Petitioner's request to certify the proposed class. Respondents, seeking to fill the gap left by the district court's conclusory order, assert that the district court's denial was justified on any of the following grounds: 1) the proposed class is undefined; 2) the claim of Petitioner is moot; 3) the claims of the proposed class are unripe; 4) class relief is barred by 8 U.S.C. § 1252(f); 5) the court lacks jurisdiction over the claims of the proposed class in light of the holding in *Rumsfeld v. Padilla*; and 6) the proposed class does not meet the requirements of Federal Rule of Civil Procedure 23. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292. We conclude that none of the grounds offered by Respondents justify denial of class certification and that the class meets the requirements of Rule 23; accordingly, we reverse.

## I. Background

Petitioner is a citizen of Mexico who came to the United States at the age of one in 1979. He became a lawful permanent resident eight years later. Petitioner was arrested in April 2004, charged with being removable based on past drug and theft convictions, and detained thereafter by the Department of Homeland Security. Petitioner contested his removability before an immigration judge ("IJ"), who determined he was subject to mandatory removal based on either of his past offenses. The Board of Immigration Appeals ("BIA") reversed the IJ's finding that Petitioner was removable on the basis of his drug offense, but upheld the IJ's finding that his theft conviction was an aggravated felony requiring removal. Petitioner appealed the BIA's finding that his theft offense constituted an aggravated felony and we stayed his removal pending our decision. The appeal has been held in abeyance pending determination of a separate appeal to the United States Supreme Court. During his detention Petitioner received three custody reviews from Immigration and Customs Enforcement that determined to continue his detention, the latest occurring in September 2006. In conjunction with these reviews, Petitioner received no hearing or notice explaining ICE's decision beyond mention that his Ninth Circuit appeal was pending.[1]

---

1. Petitioner also was at one point deemed eligible for release on a bond of $15,000,

which Petitioner could not pay. This bond

On May 16, 2007, Petitioner filed the current Petition for Writ of Habeas Corpus against the secretaries of the Departments of Homeland Security and Justice, the field office director in the Central District of California for Immigration and Customs Enforcement ("ICE"), and the head officials of various alien detention facilities in the district ("Respondents"). Petitioner seeks relief on behalf of himself and a class of aliens in the Central District of California "who 1) are or will be detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, and 2) have not been afforded a hearing to determine whether their prolonged detention is justified." (Pet. for Writ of Habeas Corpus ¶ 39.) Petitioner asserts that the detention of the members of the proposed class is not authorized by statute, and, in the alternative, that if their detention is authorized it violates the Fifth Amendment's guarantee of due process. Petitioner's requested relief includes the certification of the proposed class, appointment of Petitioner's counsel as class counsel, and injunctive and declaratory relief providing all members of the class "constitutionally-adequate individual hearings before an immigration judge . . . , at which Respondents will bear the burden to prove by clear and convincing evidence that Petitioner and each class member is a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future." (Pet. for Writ of Habeas Corpus 21.)

On June 25, 2007 Petitioner filed a Motion for Class Certification, which was opposed by Respondents on the same grounds now raised in this appeal. ICE released Petitioner from detention under an order of supervision approximately a month later pursuant to 8 C.F.R. § 241.4. Respondents subsequently filed a motion to dismiss Petitioner's action on mootness grounds in light of his release.

The district court denied Petitioner's Motion for Class Certification and the Respondents' Motion to Dismiss on March 19, 2008 in a two-sentence order. Petitioner filed the current appeal of the denial of class certification on July 17, 2008.

## II. Standard of Review

We review a district court's decision to deny class certification for abuse of discretion. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir.2001), *amended*, 273 F.3d 1266 (9th Cir.2001). However, a district court's decision as to class certification is not afforded the " 'traditional deference' " when it is not "supported by sufficient findings." *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir.2003) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161(9th Cir. 2001)). Here, where the district court made no findings whatsoever in support of its denial of class certification, but the record before us is sufficiently developed, "we may evaluate for ourselves" whether the class should be certified. *Las Vegas Sands*, 244 F.3d at 1161.[2] Respondents contend that we should afford the full deference normally accorded the district court's order on the basis that its findings and reasoning can be derived implicitly

order was later revoked after the BIA determined his appeal.

**2.** We do not opine on the appropriate course for the reviewing court when a district court

makes some, but insufficient, findings, justifying its class certification determination, as that is not the posture we face here.

from Respondents' opposition to class certification filed below. Respondents, however, offered multiple reasons for denying class certification. We would be engaging in mere guesswork were we to assume the district court relied on any particular reason or reasons. We, therefore, follow *Las Vegas Sands* in reviewing the district court's determination.

### III. Definition of Proposed Class

■ Petitioner seeks to certify a class of detainees who are held pursuant to what Petitioner labels the "general immigration statutes." Respondents assert that Petitioner's use of the phrase "general immigration statutes" creates an undefined class. While not a model of clarity, Petitioner's habeas corpus petition and request for class certification together indicate that "general immigration statutes" refers narrowly to 8 U.S.C. § 1226, 8 U.S.C. § 1225(b), and 8 U.S.C. § 1231(a). Whether 8 U.S.C. § 1182(d)(5)(A) is also included in the definition is ambiguous, as it is only referenced in Petitioner's subsequent filings. This is of no practical importance, however, as Section 1182(d)(5)(A) merely

provides for discretionary parole of detainees, which, upon revocation, returns the detainees to the form of legal detention they were in prior to parole. 8 U.S.C. § 1182(d)(5); *see Clark v. Martinez*, 543 U.S. 371, 385–86, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (discussing effect of Section 1182(d)(5) on detention status). Hence, we conclude Petitioner's proposed class is adequately defined for certification.

### IV. Immigration Detention Statutes

The three immigration detention statutes implicated by the proposed class govern detention of aliens at different stages of the admission and removal process. 8 U.S.C. § 1225(b) provides for discretionary detention of aliens pending a determination of admissibility.[3] 8 U.S.C. § 1226 provides for both discretionary detention generally and mandatory detention for certain narrow categories of aliens pending a determination of their removability.[4] 8 U.S.C. § 1231(a) provides for mandatory detention of aliens ordered removed during the 90 day removal period and discretionary detention after the end of the removal period.[5] Petitioner's request for

---

**3.** 8 U.S.C. § 1225(b)(1)(B)(ii) provides:

> If the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution ..., the alien shall be detained for further consideration of the application for asylum.

8 U.S.C. § 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

**4.** 8 U.S.C. § 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

8 U.S.C. § 1226(c) provides:

> The Attorney General shall take into custody any alien who ... is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title, ... is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title, ... is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[sic] to a term of imprisonment of at least 1 year, or ... is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

**5.** 8 U.S.C. § 1231(a)(2) provides:

relief raises the question of whether prolonged detention without a bond hearing is authorized under any of these statutes and, in the alternative, even if it is authorized, whether such detention is constitutional. These are not new questions for this court. In a series of decisions, the Supreme Court and this court have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing. Each decision has undertaken interpretation of the immigration detention statutes against the backdrop of the serious constitutional issues raised by indefinite or prolonged detention. We review these decisions to provide the necessary context to aid in determining the appropriateness of class relief.

### A. Discretionary Detention

██ In *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Supreme Court first took up the question of whether an immigration discretionary detention statute authorized indefinite or prolonged detention. The alien there was detained pursuant to Section 1231(a)(6), authorizing discretionary detention of aliens after the removal period. The Court held that a "[a] statute permitting indefinite detention of an alien

would raise a serious constitutional problem." *Id.* at 690, 121 S.Ct. 2491. The Court found Section 1231(a)(6) ambiguous as to whether it authorized indefinite detention and, therefore, "interpreting the statute to avoid a serious constitutional threat, ... conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699, 121 S.Ct. 2491. The Court determined that for six months following the beginning of the removal period an alien's detention was presumptively authorized. *Id.* at 701, 121 S.Ct. 2491. However, after that period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" in order to continue to detain the alien. *Id.* Though *Zadvydas* dealt only with aliens detained pursuant to Section 1231(a)(6) who were removable under Section 1227(a)(1)(C), 1227(a)(2) or 1227(a)(4), the Supreme Court subsequently extended its holding to the other two categories of aliens governed by the statute: aliens inadmissible under Section 1182 and aliens determined by the Secretary of Homeland Security to be a risk to the community or a flight risk. *See Clark*, 543 U.S. at 378, 125 S.Ct. 716; *see also Xi v. INS*, 298 F.3d 832, 834 (9th Cir.2002). We have further extended the

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(6) provides:
An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply

with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(1)(C) provides:
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Zadvydas* framework to discretionary detention pursuant to Section 1225(b) and 1226(a), finding that indefinite detention under these statutes poses the same constitutional concerns present in *Zadvydas*. See *Prieto–Romero v. Clark*, 534 F.3d 1053, 1062–63 (9th Cir.2008); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078–80 (9th Cir.2006).

 Having applied the *Zadvydas* framework to determine when prolonged discretionary detention is authorized, we have also begun to determine what sort of bond hearing, if any, is needed to justify prolonged discretionary detention for individual petitioners. As we stated in *Prieto–Romero*, even when detention is authorized by statute, "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" 534 F.3d at 1065 (quoting *Zadvydas*, 533 U.S. at 690–91, 121 S.Ct. 2491). In *Casas–Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949–52 (9th Cir.2008), we determined that Section 1226(a) authorized detention of the petitioner at issue and proceeded to discuss what bond hearing, if any, he was entitled to. We concluded that Section 1226(a) provided authority for the Attorney General to release an alien detained under the section on bond following a bond hearing. *Id.* "Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,'" we further concluded "that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing." *Id.* (emphasis omitted). Hence, we held that an alien detained under Section 1226(a) "is entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community." *Id.* at 951(internal quotation marks omitted);

see also *Flores–Torres v. Mukasey*, 548 F.3d 708, 709 n. 2 (9th Cir.2008); *Prieto–Romero*, 534 F.3d at 1065–66 (finding three bond hearings for Section 1226(a) detainee satisfied due process); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir.2005) (finding alien detained for nearly three years could not be mandatorily detained under Section 1226(c) and ordering bond hearing, impliedly finding alien was detained under Section 1226(a)).

In *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir.2008), by contrast, we refused to reach the issue of whether a bond hearing was required under Section 1231(a)(6). We held the detention of the petitioner at issue beyond the six month period was authorized under Section 1231(a)(6). *Id.* at 1233. We then turned to the issue of what bond hearing, if any, the petitioner was entitled to for determining the necessity of his detention. We concluded that while release on bond was clearly authorized by Section 1231(a)(6) and its implementing regulations, it was unclear whether a bond hearing was required under the statute for petitioner and what burden if any should be placed on the government at such a hearing. *Id.* at 1234–35. Because the district court had not had an opportunity to reach this question, we declined to reach it in the first instance and remanded. *Id.* at 1235. However, in doing so we noted that the issue was "somewhat similar" to that in *Casas–Castrillon*, strongly implying that the district court's determination should at least be informed by its reasoning. *Diouf*, 542 F.3d at 1234–35.

### B. Mandatory Detention

 We have also dealt with indefinite or prolonged detention under immigration mandatory detention provisions, including Sections 1226(c), 1231(a)(2), and 1231(a)(1)(c). Section 1226(c) provides for mandatory detention of criminal aliens for

expedited removal. The Supreme Court has held that detention pursuant to Section 1226(c) does not raise any due process concerns. *Demore v. Kim*, 538 U.S. 510, 531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). However, in upholding Section 1226(c), the Court interpreted it to authorize mandatory detention only for the "limited period of [the alien's] removal proceedings," which the Court estimated "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. *Id.* at 530–31, 123 S.Ct. 1708. We have subsequently clarified that, in order to avoid the serious constitutional questions raised by indefinite mandatory detention, detention of an alien beyond an expedited period ceases to be mandatory under Section 1226(c) and instead becomes discretionary under Section 1226(a). *See Casas–Castrillon*, 535 F.3d at 951; *Tijani*, 430 F.3d at 1242.

■ We have additionally held that detention pursuant to Section 1231(a)(2) poses no due process issues, regardless of whether removal of the detained alien is foreseeable, because the statute authorizes detention for only the ninety-day removal period and therefore does not create any danger of unconstitutionally indefinite detention. *Khotesouvan v. Morones*, 386 F.3d 1298, 1299–1301 (9th Cir.2004). We have taken the same view when an alien is detained pursuant to the related provision of 8 U.S.C. § 1231(a)(1)(C), which allows the removal period to be extended and detention to continue beyond ninety days if an alien conspires or acts to prevent his own removal. *Pelich v. INS*, 329 F.3d 1057, 1058–61(9th Cir.2003). The court, while "expressly declin[ing] to endorse or reject any inferred *Zadvydas*-inspired limitation to § 1231(a)(1)(C)" found that, in any case, "an alien cannot assert a viable constitutional claim when his indefinite de-

tention is due to his failure to cooperate with the INS's efforts to remove him." *Id.* at 1060–61; *see also Lema v. INS*, 341 F.3d 853, 857 (9th Cir.2003) ("We conclude that 8 U.S.C. § 1231(a)(1)(C) ... authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents.") Key to this determination was the court's view that "[t]he risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Pelich*, 329 F.3d at 1060.

## V. Alleged Bars to Class Relief

■ Petitioner seeks to end our piecemeal rulings in habeas actions on the necessity of bond hearings to justify prolonged detention in the immigration context and have the courts address the issue on a class-wide basis across the various general immigration detention statutes. While "ordinarily disfavored," the Ninth Circuit has recognized that class actions may be brought pursuant to habeas corpus. *Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir.1987); *see also Mead v. Parker*, 464 F.2d 1108, 1112–13 (9th Cir.1972) (finding habeas relief to be appropriate in cases "where the relief sought can be of immediate benefit to a large and amorphous group"). Respondents assert, nonetheless, that various constitutional, statutory, and procedural bars to class relief exist in this case.

### A. Mootness

■ Respondents initially challenge class certification on the ground that Petitioner's individual claim has been rendered moot by his release from detention. In fact, mootness of the Petitioner's claim is not a basis for denial of class certification, but rather is a basis for dismissal of Peti-

tioner's action. Because the district court did not dismiss Petitioner's action, but only denied class certification, we see no reason to conclude it based its denial on a finding of mootness. If it had made such a finding, it would have been in error. Petitioner was released pursuant to 8 C.F.R. § 241.4, which provides that "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). While the regulation provides the detainee some opportunity to respond to the reasons for revocation, it provides no other procedural and no meaningful substantive limit on this exercise of discretion as it allows revocation "when, in the opinion of the revoking official ... [t]he purposes of release have been served ... [or][t]he conduct of the alien, *or any other circumstance*, indicates that release would no longer be appropriate." *Id.* § 241.4(*l*)(2)(i), (iv) (emphasis added). This places Petitioner in a position analogous to the petitioner challenging his prolonged detention in *Clark v. Martinez*, who was released from detention pursuant to a discretionary parole provision while his suit was ongoing. The Supreme Court found his case was not mooted:

> If Benitez is correct, as his suit contends, that the Government lacks the authority to continue to detain him, he would have to be released, and could not be taken back into custody unless he violated the conditions of release ... or his detention became necessary to effectuate his removal.... His current release, however, is not only limited to one year, *but subject to the Secretary's discretionary authority to terminate* .... Thus, Benitez continue[s] to have a personal stake in the outcome of his petition.

*Clark*, 543 U.S. at 376 n. 3, 125 S.Ct. 716 (citations and internal quotation marks omitted) (emphasis added). Petitioner asserts that the government cannot detain him unless it can demonstrate by clear and convincing evidence at a hearing before an immigration judge that he is a sufficient danger or flight risk to justify his detention. If Petitioner is successful in his petition he would be entitled to such a hearing where the government would need to meet its burden or offer him a nondiscretionary release until such time as it can make the requisite showing or has an independent statutory basis to detain him. This would place Petitioner in a far different situation from his current one, released pursuant to the government's independent determination but subject to revocation on the government's discretion without hearing before a neutral decision-maker and without burden of justification on the government. Hence, like the petitioner in *Clark*, Petitioner here retains a personal stake in the determination of his claim such that it is not moot.

We further note that Petitioner's current release is subject to a number of restrictions, including the requirements that he remain within 50 feet of his home from 7:00 p.m. to 7:00 a.m. every night and wear an ankle monitoring device at all times. Petitioner proposes that he receive a bond hearing to determine not only whether he should be released, but also under what conditions such release would take place. The strict limitations on Petitioner's freedom, therefore, provide an additional reason why his case presents a live controversy. *Cf. Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (holding that when habeas petitioner was released from custody, but his felony conviction prevented him from engaging in certain businesses, voting, and serving on juries, underlying habeas case still presented live controversy).

## B. Ripeness

 Respondents additionally argue that class certification must be denied because the claims of the proposed class are not all yet ripe.[6] "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir.2009) (internal quotation marks omitted). Respondents first argue that the claims of proposed class members detained pursuant to Section 1226(a) are unripe because there is no indication yet that the government is refusing to comply with *Casas–Castrillon*'s ruling. This argument rests on a misunderstanding of what constitutes membership in the proposed class. Members of the proposed class are by definition aliens who have been detained without a bond hearing. If an alien who would otherwise be a member of the class receives a bond hearing pursuant to *Casas–Castrillon* or any other ruling they would cease to be a member of the class. Hence, the government's full compliance with *Casas–Castrillon* could reduce the size of the class, but it could not render the claims of class members unripe. Respondents additionally argue that the proposed class suffers from ripeness issues because it references future class members. The inclusion of future class members in a class is not itself unusual or objectionable. *See, e.g., Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir.1986); *LaDuke v. Nelson*, 762 F.2d 1318, 1321–26 (9th Cir.1985). When the future persons referenced become members of the class, their claims will necessarily be ripe. Hence, we conclude that the requirement of ripeness raises no bar to certification of the class.

## C. 8 U.S.C. § 1252(f)

Respondents assert that 8 U.S.C. § 1252(f)(1), Section 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), bars class certification in this case. Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by [IIRIRA], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). Part IV includes 8 U.S.C. §§ 1221–1231. *See Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir.2000) (en banc). Respondents argue that Section 1252(f) bars the proposed class from receiving any injunctive relief, thereby requiring denial of class certification.

 Respondents are doubly mistaken. Section 1252(f) cannot bar certification of the class unless it bars the proposed class from receiving any class relief. Respondents do not argue, and it is not the case, that Section 1252(f) bars Petitioner from receiving declaratory relief on behalf

---

**6.** Respondents assert that Petitioner waived any challenge to their ripeness argument by not raising it in his opening brief. This argument is groundless. We have previously held that the failure of a party in its opening brief to challenge an alternate ground for a district court's ruling *given by the district court* waives that challenge. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir.2005);

*MacKay v. Pfeil*, 827 F.2d 540, 542 n. 2 (9th Cir.1987). Here, the district court did not cite ripeness or any other rationale for its denial of certification. Petitioner does not waive a challenge to any ground for denial of certification in its opening brief on appeal that was not relied on in the district court's order.

of the class. The Supreme Court has recognized as much: "By its plain terms, and even by its title, [Section 1252(f)] is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–1231, but specifies that this ban does not extend to individual cases." *Reno v. Am.-Arab Anti–Discrimination Comm.,* 525 U.S. 471, 481–482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Hence, for this reason alone, Section 1252(f)(1) did not provide the district court with a basis to deny class certification.

■ In addition, we conclude that Section 1252(f) does not bar injunctive relief for the proposed class. Section 1252(f) prohibits only injunction of "the operation of" the detention statutes, not injunction of a violation of the statutes. This is a distinction we have made before in a decision vacated on unrelated grounds. *See Ali v. Ashcroft,* 346 F.3d 873, 886(9th Cir.2003), *vacated on unrelated grounds sub nom. Ali v. Gonzales,* 421 F.3d 795 (9th Cir. 2005). We held there:

"[Section] 1252(f)(1) limits the district court's authority to enjoin the INS from carrying out legitimate removal orders. Where, however, a petitioner seeks to enjoin conduct that allegedly is not even authorized by the statute, the court is not enjoining the operation of part IV of subchapter II, and § 1252(f)(1) therefore is not implicated."

*Id.* Analogously, Petitioner here does not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct it asserts is not authorized by the statutes. Petitioner argues only that the immigration detention statutes, to the extent they cannot be interpreted as requiring provision of a bond hearing, must be

enjoined as unconstitutional. However, as this latter argument for relief may never be reached, it cannot be a basis for denial of class certification.

Respondents assert that we should not adopt the reasoning of the vacated opinion in *Ali,* but instead follow our decision in *Catholic Soc. Servs., Inc. v. INS,* 182 F.3d 1053(9th Cir.1999), *aff'd in part and rev'd in part en banc,* 232 F.3d 1139 (9th Cir. 2000). There we found that injunctive relief for a class asserting that the INS misinterpreted legalization provisions of the Immigration Control and Reform Act was barred by Section 1252(f). We stated:

[R]egardless of the fact that the injunction provides relief for a harm ostensibly created by the INS' misinterpretation of the legalization provisions of part V, insofar as it would interfere with the operation of part IV, the injunction here is contrary to the plain language of § 1252(f) and the district court lacked the jurisdiction to enter it.

*Id.* at 1062. We subsequently reversed this conclusion on en banc review, however, on the basis that the ordered injunction was issued under part V of the subchapter, rather than part IV and, therefore, not within the terms of Section 1252(f). *Catholic Soc. Servs.,* 232 F.3d at 1150. Were we nonetheless to accept the panel's reasoning as persuasive, it would not control here. The requested injunction at issue does not seek to enjoin the operation of Part IV provisions to relieve harm caused by misinterpretation of other statutory provisions, but to enjoin conduct alleged not to be authorized by the proper operation of Part IV provisions. The sound reasoning of *Ali* persuades that this is not barred by the plain terms of Section 1252(f).[7]

---

7. Petitioner additionally argues that Section 1252(f) properly interpreted does not apply to claims for habeas relief at all. We do not reach this argument at this time, as it is sufficient to find that the district court may in some scenario grant the proposed class some of the relief sought to determine that the class may be certified.

### D. Rumsfeld v. Padilla

Finally, Respondents claim that the Supreme Court's holding in *Rumsfeld v. Padilla*, 542 U.S. 426, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), renders class action relief inappropriate in this case. In *Padilla*, the Supreme Court stated that "longstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435, 124 S.Ct. 2711. Respondents argue that this statement mandates that the proper respondents for members of the proposed class are the various wardens overseeing their individual custody. Respondents assert that this renders class relief impossible because, "at a jurisdictional minimum," all proposed class members must be under the immediate supervision of the same custodian. (Resp'ts Answering Br. 16.) Respondents fail to recognize that *Padilla* specifically reserved the question of whether the proper respondent in habeas challenges brought by "an alien detained pending deportation" would be the immediate custodian of the alien. *Padilla*, 542 U.S. at 436 n. 8, 124 S.Ct. 2711. We need not reach it because, even were the Supreme Court's statement in *Padilla* applicable here, Respondents' argument is baseless. Respondents cite no authority or rationale for the proposition that we do not have jurisdiction to provide class relief in a habeas corpus action that meets the requirements for certification merely because class members are in the immediate custody of different facilities. Such actions have been maintained previously against single and multiple respondents. *See Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (class of juveniles sought habeas corpus relief from pretrial detention under state law); *U.S. ex rel.*

*Sero v. Preiser*, 506 F.2d 1115 (2d. Cir. 1974) (class of young adults sought habeas corpus relief from serving terms in state reformatories). Regardless of who the proper respondents for the class are, we conclude certification of the class will not pose any jurisdictional concerns.

### VI. Rule 23

In addition to raising various bars to class relief, Respondents assert that the proposed class fails to comply with the requirements of Federal Rule of Civil Procedure 23, governing class certification. Rule 23(a) provides that a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The party seeking certification must meet all of these requirements and Rule 23(b) further provides that for certification the class must fall into one of three categories. *Zinser*, 253 F.3d at 1186("[T]he party seeking class certification ... bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).") Petitioner seeks certification under the category provided for in Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.Civ.P. 23(b)(2). Respondents challenge the proposed class's compliance with all

aspects of Rule 23 except the numerosity requirement, which Respondents concede is met. We discuss the proposed class's compliance with the remaining requirements individually.

## A. Commonality

The commonality requirement "serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir.1998). We have construed this requirement "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019(9th Cir.1998). It is not necessary that "[a]ll questions of fact and law . . . be common to satisfy the rule." *Id.* We have found "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.; see, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376(2d Cir.1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56(3d. Cir.1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."). Nor does "common" as used in Rule 23(a)(2) mean "complete congruence." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990(9th Cir.2006). We find the claims of the class share sufficiently common questions of law to meet the requirement of Rule 23(a)(2).

Respondents challenge the commonality of class members' claims on the ground that class members suffer detention for different reasons and under the authority of different statutes. Respondents assert that, as a result, the question of whether individual class members' detention may be continued without a bond hearing turns on divergent questions of statutory interpretation and consideration of different factual circumstances. Respondents are undoubtedly correct that members of the proposed class do not share every fact in common or completely identical legal issues. This is not required by Rule 23(a)(2). Instead, the commonality requirements asks us to look only for some shared legal issue or a common core of facts. This the proposed members of the class certainly have. In each case in which we have interpreted the scope of various statutes providing for both discretionary and mandatory detention in the immigration context, our determinations have been guided, if not controlled, by the question of whether indefinite or prolonged detention generating serious constitutional concerns is present. A form of that question is posed here: may an individual be detained for over six months without a bond hearing under a statute that does not explicitly authorize detention for longer than that time without generating serious constitutional concerns? This question will be posed by the detention of every member of the class and their entitlement to a bond hearing will largely be determined by its answer. *See Casas–Castrillon*, 535 F.3d at 951 ("Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing." (emphasis omitted)); *Tijani*, 430 F.3d at 1242 (interpreting statutory framework to provide bond hearing because "it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal."). The nature of the particular statute authorizing the detention of individual class members will play some role in determining whether class members are

entitled to relief, as well. Nonetheless, the constitutional issue at the heart of each class member's claim for relief is common.

We also note that a finding of commonality here serves the purposes of the requirement. Answering comprehensively in a class setting the constitutional question that is at the center of the proposed class's claims will facilitate development of a uniform framework for analyzing detainee claims to a bond hearing. This would render management of these claims more efficient for the courts. It would also benefit many of the putative class members by obviating the severe practical concerns that would likely attend them were they forced to proceed alone. In many of the cases where we have adjudicated these immigration detention claims, the petitioner had been detained well beyond six months, the point at which counsel contends that the putative class members should be entitled to a bond hearing. *See, e.g., Tijani,* 430 F.3d at 1242(9th Cir.2005) (ordering a bond hearing after an alien was detained for nearly three years). Without certification, therefore, many of the putative class members likely would not be able to adjudicate their claimed need of a bond hearing after six months of detention—that claim would become moot before the district court could come to a decision. Thus, for many of the putative class members, class treatment in this case is likely necessary to provide the remedy sought.

To the extent there may be any concern that the differing statutes authorizing detention of the various class members will render class adjudication of class members' claims impractical or undermine effective representation of the class, it may counsel the formation of subclasses. *See* Fed.R.Civ.P. 23(c)(5); *Marisol A.,* 126 F.3d at 378–79 (finding subclasses appropriate where groups of class members each had "separate and discrete legal claims pursuant to particular federal and state constitutional, statutory, and regulatory obligations of the defendants"). Because the possibility of subclasses was not raised below, we leave it to the district court to reach it in the first instance. The parties may submit proposals for formation of subclasses on remand and the district court shall exercise its discretion to determine whether adoption of any proposal would be appropriate. *See U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 407–08, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (holding that court of appeals may order district court to consider any proposals for subclasses made on remand). The district court, however, should not lose sight of the overarching issue: The circumstances, if any, that would warrant prolonged detention without hearing.

### B. Typicality

■■■■■ The typicality requirement looks to whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001) (quoting *Marisol A.,* 126 F.3d at 376). Like the commonality requirement, the typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. We conclude that Petitioner's claim for a bond hearing is reasonably co-extensive with the claims of the class. Though Petitioner and some of the other members of the proposed class are detained under different statutes and are at different points in the removal process and hence do not raise identical claims, they all, as already discussed, raise similar

constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings. *Cf. Armstrong*, 275 F.3d at 869 (finding typicality where class representatives suffered with rest of class "a refusal or failure to afford them accommodations as required by statute, and [were] objects of discriminatory treatment on account of their disabilities" in parole and parole revocation proceedings).

 Respondents argue that Petitioner's claims are not typical of the class because of his supervised release and because of his aggravated felon status, currently under appeal. Both are immaterial. The single relevance Petitioner's supervised release has to his claim is to whether it renders Petitioner's claim moot. Defenses unique to a class representative counsel against class certification only where they "threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (internal quotation marks and citation omitted). We have determined that Petitioner's supervised release does not moot his claim and, therefore, no mootness defense particular to him will interfere with the ongoing class litigation.

Petitioner's aggravated felon status is similarly of no significance to the typicality analysis. The claims of Petitioner and the class on the whole are that they are entitled to a bond hearing in which dangerousness and risk of flight are evaluated. While Petitioner's criminal history is currently central to the question of whether Petitioner will ultimately be removed and will almost certainly be relevant to any bond hearing determination, the determination of whether Petitioner is *entitled* to a bond hearing will rest largely on interpretation of the statute authorizing his detention. The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question and, therefore, cannot render Petitioner's claim atypical.

### C. Adequacy

 "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.' " *Walters*, 145 F.3d at 1046 (quoting *Crawford v. Honig*, 37 F.3d 485, 487(9th Cir.1994)). Petitioner alleged the qualifications of his counsel and the lack of conflict or collusion in the court below. Respondents do not question these allegations. Instead, they challenge Petitioner's adequacy only by reasserting their commonality and typicality arguments. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (noting that commonality and typicality concerns also relate to a representative's adequacy). As we do not find that these arguments have merit, Respondents have provided no reason to conclude that class certification is properly denied for the reason that Petitioner is an inadequate class representative.

### D. Rule 23(b)(2)

Respondents challenge certification under Rule 23(b)(2) on grounds parallel to their challenge under Rule 23(a). Respondents assert that as class members are potentially detained pursuant to different statutes, Respondents have not refused to act or acted on grounds generally applicable to the class. In particular, Respondents note that some class members may not ultimately be entitled to a bond hearing because they are properly subject to mandatory detention and that the regulations currently implementing the various discretionary detentions statutes provide

for a different burden of proof at bond hearings than that found to be required by us in *Casas–Castrillon* for aliens detained pursuant to Section 1226(a).

▮▮▮▮▮ Respondents' contentions miss the point of Rule 23(b)(2). "Class certification under Rule 23(b)(2)" requires that "the primary relief sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195. The rule does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them. As we have previously stated, "it is sufficient" to meet the requirements of Rule 23(b)(2) that "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047; *see Alliance to End Repression v. Rochford*, 565 F.2d 975, 979 (7th Cir.1977) (finding Rule 23(b)(2) met despite "individual qualities of [the] suit" because of "pattern or practice characteristic of defendants' conduct that is generally applicable to the class" (internal quotation marks omitted)). The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2). *Walters*, 145 F.3d at 1047; *cf. Gibson v. Local 40, Supercargoes and Checkers*, 543 F.2d 1259, 1264 (9th Cir.1976) ("A class action may be maintained under [Rule] 23(b)(2), alleging a general course of racial discrimination by an employer or union, though the discrimination may have ... affect[ed] different members of the class in different ways...."). Furthermore, unlike actions brought under one of the other 23(b) prongs, "questions of manageability and judicial economy are ... irrelevant to 23(b)(2) class actions." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir.1993); *see Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir.1977) ("By its

terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a (b)(3), not a (b)(2), class action."), *aff'd in pertinent part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The proposed members of the class each challenge Respondents' practice of prolonged detention of detainees without providing a bond hearing and seek as relief a bond hearing with the burden placed on the government. The particular statutes controlling class members' detention may impact the viability of their individual claims for relief, but do not alter the fact that relief from a single practice is requested by all class members. Similarly, although the current regulations control what sort of process individual class members receive at this time, all class members seek the exact same relief as a matter of statutory or, in the alternative, constitutional right. Hence, we conclude that the proposed class meets the requirements of Rule 23(b)(2). *Cf. Walters*, 145 F.3d at 1047 (certifying under Rule 23(b)(2) class of aliens seeking declaratory and injunctive relief on ground that they received constitutionally deficient notice of deportation procedures following charges of document fraud); *Marisol A.*, 126 F.3d at 378 (certifying under Rule 23(b)(2) class of children seeking declaratory and injunctive relief from systemic failures in child welfare system despite differing harms experienced by class members).

## VII. Conclusion

Having found that none of the bars to class relief raised by Respondents prevent certification of the proposed class and that the class meets the requirements of Rule 23, we reverse the district court's denial of class certification and we remand for further proceedings. We leave to the district court's discretion the question of whether

formation of subclasses would be appropriate.

**REVERSED AND REMANDED.**