Jeff KANDEL, et al.

v.

**BROTHER INTERNATIONAL CORP., et al.**

David Lipper, et al.

v.

Brother International Corp., et al.

Nos. CV 08–1040 DSF (RCx), CV 08–6126 DSF (RCx).

United States District Court, C.D. California.

Feb. 1, 2010.

Amber S. Healy, Mitch H. Kalcheim, Kalcheim Law Group PC, Beverly Hills, CA, James P. Bonner, Ralph M. Stone, Shalov Stone Bonner and Rocco LLP, New York, NY, Helen U. Kim, Kalcheim Law Group, Los Angeles, CA, for Plaintiff.

Karen Elizabeth Walter, Layne H. Melzer, Michelle Christina Hribar, Rutan & Tucker, Costa Mesa, CA, for Defendants.

**Proceedings:** (In Chambers) Order DENYING Motion for Class Certification (Docket No. 158)

DALE S. FISCHER, District Judge.

## I. FACTS

Plaintiffs Jeff Kandel, David Lipper, and Symeon Argyropoulous are proposed representatives of a class of purchasers of Brother brand printers. They allege that Defendant manufacturers, Brother International Corp. ("BIC") and Brother Industries, Ltd. ("BIL"), designed Brother printers so as not to utilize all of the toner in the toner cartridges used in the printers. Plaintiffs claim that these design elements caused users to fail to reach advertised page yields per toner cartridge. Plaintiffs further claim that Defendants misrepresented the functionality of the printers and misled them, and others similarly situated, into believing that all of the toner in each cartridge would be used. Defendants do not deny that the printers do not utilize all of the toner in the cartridges, but they deny they have made false or misleading representations or otherwise done anything improper.

The major issues presented in the case revolve around two design elements in Brother printers that the Court will call the "roller failsafe" issue and the "toner empty" issue.[1] The "roller failsafe" issue refers to the function in Brother printers that causes them to stop printing and indicate that the toner needs to be replaced after a set number of turns of the developer roller regardless of the amount of toner remaining in the car-

---

1. The use of the term "issue," while somewhat clumsy, is intended to avoid the biased and argumentative terminology used by the parties.

tridge. The "toner empty" issue refers to the function in Brother printers that causes them to display a "toner empty" message—either literally on an LED screen or through LED lights that can be interpreted using the user guide—after the toner has been "degraded" to a certain point despite the literal presence of remaining toner.[2] Brother claims that both functions are included to prevent poor print quality and damage to the print drum caused by use of degraded, recycled toner. Plaintiffs claim that both of these functions are included to induce users to purchase more toner than is required and demonstrate that Brother's representations regarding page yield and that the printer's toner is "empty" are false.

## II. ANALYSIS

Before certifying a class, district courts must perform a "rigorous analysis" to determine whether the requirements of Rule 23 of the Federal Rules of Civil Procedure are met. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir.1996). The party seeking class certification bears the burden of proving that these requirements are met. *Rodriguez v. Hayes*, 578 F.3d 1032, 1047 (9th Cir.2009). At this stage of the proceedings, courts must accept the factual allegations in the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Even so, courts "are at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992) (internal quotation marks omitted).

To certify a class under Rule 23, the party seeking class certification must first satisfy the four elements listed in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *Valentino*, 97 F.3d at 1234. Because the Court finds that Plaintiffs have not satisfied the typicality and adequacy of representation requirements of Rule 23, it does not certify the class and does not discuss the other aspects of Rule 23 in depth.

**A. Typicality**

■ Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). Representatives' claims are typical if they are "reasonably co-extensive" with those of other class members, and "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose...." *Hanon*, 976 F.2d at 508 (citation and internal quotation marks omitted). The named plaintiffs' claims merely need to be "sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir.1990) (citation omitted). The inquiry under the typicality standard is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (citation omitted). Where the claims of a representative are subject to unique defenses, they may fail the typicality requirement. *Id.* However, such defenses should defeat typicality "only where they 'threaten to become the focus of the litigation.'" *Rodriguez*, 578 F.3d at 1050 (*quoting Hanon*, 976 F.2d at 508).

■ The three named plaintiffs are not sufficiently typical of the class in general to allow class certification. Most significantly, all three Plaintiffs are susceptible to individual defenses that threaten to detract seriously from the presentation of the class's case and become a central focus of the litigation. First, it is not clear that any of the three Plaintiffs actually purchased either a Brother printer or a Brother ink cartridge—that is, it is disputed whether any of the named Plaintiffs are even members of the class. There is significant evidence that the printers and

**2.** Plaintiffs suggest that the "toner end life" message that some Brother printers give is equivalent to a statement that the cartridge is out of toner. This is a questionable inference—the toner could be at life's end because it is unusable even though it is not literally gone—but the issue is more relevant to the merits of the claim than to class certification.

cartridges that Plaintiffs allegedly purchased were purchased by, or on behalf of, corporate entities associated with Plaintiffs and not by Plaintiffs themselves. (*See, e.g.,* Def. Ex. 60 at 50:18–51:7, 95:20–98:14, Ex. 62–63 (Kandel); Ex. 66 (Lipper); Ex. 69 at 18:19–21, 20:6–23:3, 41:11–42:9 (Argyropoulos).) On a related issue, for the purposes of the Consumer Legal Remedies Act ("CLRA") claim, there is significant evidence that none of the named Plaintiffs is a "consumer" within the meaning of the CLRA because the evidence strongly suggests that the printers and cartridges were primarily purchased for business and not for personal use.[3] (*See generally* Def. Statement of Undisputed Facts ¶¶ 1–8, 12–16, 20–27.) This means that the named Plaintiffs may not even have standing to raise their own CLRA claims and could certainly not represent the class in a CLRA action. It is Plaintiffs' burden to satisfy the Court that they have standing to raise their claims and are typical of other class members. At this point, they have not convinced the Court that they are class members at all. The potential for these issues to sidetrack the class litigation is illustrated by the number of conflicting deposition excerpts, declarations, and expert opinions that have been submitted on the issues in furtherance of this motion and the pending motion for summary judgment.

Beyond standing issues, all three named Plaintiffs face serious individual defenses in other aspects of the case. None of the three

Plaintiffs has established that he encountered the roller failsafe issue. Plaintiff Lipper is alleged to have encountered it—in part due to his dog unplugging his printer repeatedly, causing the roller to "warm up" unnecessarily—but there is little hard evidence in the record to indicate that this actually occurred.[4] And even if Lipper did encounter the roller failsafe issue, the fact that his dog had to regularly unplug his printer in order for the issue to arise indicates non-typical use and threatens an extended digression into whether any class member without a mischievous dog—or the equivalent—will ever care about the roller failsafe issue.[5]

The named Plaintiffs' lack of typicality also is apparent with regard to the "toner empty" issue. Plaintiff Kandel appears not to have relied on any message indicating that the toner cartridge in his printer was empty, because he shook the cartridge and continued to print. (*See* Def. Ex. 60 at 49:20–53:8.) Kandel even bought another Brother printer knowing of the alleged frauds at issue. (*See id.* at 83:13–85:16.) Plaintiff Argyropoulos is also subject to significant individual defenses on this issue because he has admitted that he observed degraded print quality before he received the "toner empty" message. (*See* Def. Ex. 69 at 77:23–29:9; 109:25–110:5.) This contradicts Plaintiffs' central theory of the case, which is that Brother printers are capable of extensive printing after the "toner empty" message is received.[6] Argyropoulos

---

3. The Court does not rule on Defendants' pending motion for summary judgment on the CLRA claim at this time. The Court will note that, at a minimum, the weight of the evidence appears to favor Defendants on this point.

4. Plaintiffs' expert opines that Lipper did encounter the developer failsafe, but does so by apparently relying on data taken from Lipper's printer "as of December 21, 2009," (*see* Wong Reply Decl. ¶¶ 24–26). This data was extracted from the printer over two years after Kandel's action was filed and over a year after Lipper's action was filed, and therefore is not necessarily representative of Lipper's printing patterns absent the litigation.

5. Putting aside the question of the difficulty of identifying any of Defendants' statements that are actually rendered false by the existence of the roller failsafe issue, it is likely that individual issues related to reliance/materiality would prevent a class from being certified. Defendants

argue that the triggering of the roller failsafe would only occur in very limited circumstances and any omissions regarding the roller failsafe would be immaterial to the vast majority of users. Plaintiffs present no serious evidence or argument to rebut this premise and instead appear to fall back on the dubious idea that any limitation in the printer, no matter how irrelevant to the consumer's intended use, somehow reduces the printer's value to all purchasers. (*See* Reply at 7 ("First, those Plaintiffs, like all Class Members who operate Newer Brother Devices, paid inflated prices for Brother Products.").)

6. This also indicates the wide variety of experiences members of the prospective class are likely to have had with Brother printers and the "toner low" or "toner empty" messages. Given that uses of the printers vary, it is highly likely that prospective class members differ in the amount of toner remaining when the "toner empty" mes-

also arguably did not rely on the printer's messages because he continued to print until the printer mechanically stopped.[7] (*See id.* at 78:10–80:1.)[8]

Plaintiff Argyropoulos is also subject to questions related to his credibility.[9] At his deposition, Argyropoulos claimed not to remember when he purchased toner with his own funds. (Def. Ex. 69 at 22:10–22.) But in a later declaration, he definitively stated that the purchase(s) occurred before he was aware of his claims. (Argyropoulos Decl. in Support of Opp'n to Summ. J. ("Summ. J. Decl.") ¶ 17.) Argyropoulos was also inconsistent in his explanation of why he was not reimbursed by his company for some toner expenses. At his deposition, he claimed that it was due to the de minimis nature of the expenses and that he would then deduct those expenses from his personal income taxes. (Def. Ex. 69 at 22:23–23:3, 41:13–42:9.) In his later declaration, Argyropoulos claimed that he was not reimbursed because he believed that it was a personal expense. (Summ. J. Decl. ¶ 17–19.) These inconsistencies are probably not sufficient to destroy typicality (or adequacy of representation) on their own, but they support the finding that Argyropoulos is not typical of the class.

## B. Adequacy of Representation

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Issues of typicality and adequacy of the class representatives' representation often blur, and the Court will not restate its prior points with regard to the proposed class representatives. Instead, the Court will now focus on the adequacy of the proposed class counsel.

In assessing whether class representatives and their counsel will vigorously prosecute a class action litigation, courts may consider the actual progress of the proceedings to that point. Delays in seeking class certification, a failure timely to prosecute the litigation, and any failure to comply with reasonable disclosure obligations or discovery requests are factors that suggest that the class representative is inadequate. *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (failure to move for class certification before trial indicated that representative was inadequate); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130–31 (1st Cir.1985) (long delay in prosecution of case demonstrates plaintiff's indifference to protecting class interests); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981) (failure to conduct adequate discovery in preparation for trial rendered representation inadequate).

Class counsel is not adequate to prosecute the rights of an extensive class of absent class members as shown by the numerous errors and deficiencies in representation. Counsel has failed to give proper CLRA notice, (*see* Docket No. 105, 149), improvidently failed to serve and agreed to dismiss a key defendant, (*see* Docket No. 38 (Def.Opp'n), 47 (Order)), failed to consider the important standing problems faced by the named Plaintiffs as discussed in this order, and failed to follow the Court's local rules, standing order, and instructions, (*see* Docket No. 119, 120). (*See also* Docket No. 172 at 2–3. (denial of motion to intervene).)[10] All of these faults have cost the Court and Defendants unnecessary time and expense,

---

sage is displayed and in their tolerance for reduced quality printing. This variability suggests that common issues do not predominate for the purposes of Rule 23(b)(3).

**7.** That the Brother printers mechanically stop printing after their screens display the "toner empty" message raises a serious question of whether the "toner empty" representation was material to any class member because printer users would have to replace the toner cartridge regardless of the substance of the message.

**8.** Argyropoulos also shook the toner cartridges in a sometimes successful attempt to get the printer to print more pages. (*See id.* at 78:20–79:5.)

**9.** Defendants claim that there are also significant discrepancies in Kandel's testimony. The Court has reviewed the evidence cited and finds that the issues are minor and would not likely create a major diversion at trial.

**10.** "This is only the most recent attempt by Plaintiffs and parties related to Plaintiffs to cure errors—both strategic and simply careless—by adding new parties to this litigation. The Court has been perhaps overly indulgent of Plaintiffs' past machinations in the desire to avoid prejudice to absent class members, but can see no justification for allowing this requested interven-

and, more importantly, most of them either prejudiced or ran a high risk of prejudicing the absent class members.

The failure to give proper CLRA notice has prevented the class from seeking damages under the CLRA. This was obviously prejudicial to the class. The failure to serve BIL could have seriously prejudiced the ability of the class to acquire necessary documents and to hold Defendants liable. BIL was only reintroduced into the case due to the Court's highly charitable consolidation and amendment to the standing order. (*See* Docket No. 47.) Even now, proposed class counsel fails to consider the importance of whether the named Plaintiffs are "consumers." In the motion for class certification, counsel has carelessly redefined the class to be made up of "consumers"—rather than "persons" or some other broader term—without any apparent consideration that "consumer" is a term of art defined under the CLRA that would exclude businesses and business uses from the class. Due to this choice of words, the parties have had to litigate a distracting and unnecessary side issue of whether the class is really limited to "consumers," with Defendants obviously arguing that it is so limited and Plaintiffs backtracking from their own proposed class definition.

All lawyers make mistakes and perfection is not the standard for Rule 23(a)(4). But in this case, proposed class counsel has erred repeatedly in ways that prejudiced the class or could have prejudiced the class had the Court not granted relief from counsel's errors. In this circumstance, the Court has a responsibility to protect the due process rights of the absent class members and to deny the appointment of class counsel who cannot be relied on to prosecute the class's claims in a competent manner.

### III. CONCLUSION

The motion for class certification is DENIED.

IT IS SO ORDERED.

tion given the complete absence of diligence on    the part of Plaintiffs and their counsel."